IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| **JOHN T. BRAUN, MD**<br><br>Plaintiff,<br><br>v.<br><br>**MEDTRONIC SOFAMOR DANEK, INC.,**<br><br>Defendants. | **RULING & ORDER**<br><br>Case No. 2:10-CV-1283<br><br>United States District Court<br>Judge Robert Shelby<br><br>Magistrate Judge Dustin Pead |

## BACKGROUND

On November 12, 2012, Defendant Medtronic Sofamor Danek (MSD) filed a Notice of Objection to Plaintiff John T. Braun's (Dr. Braun) Rule 30(b)(6) Deposition of MSD (Document Number 118). Dr. Braun subsequently filed a response to MSD's objections (Document Number 122), and thereafter MSD filed a reply in support of it's objections (Docket Number 139). As confirmed by the Court at a telephonic hearing held on March 25, 2013, the parties have agreed to treat MSD's Notice of Objection to the Rule 30(b)(6) depositions as a Motion for Protective Order (Document Number 204, 211). Further, on March 8, 2103, Dr. Braun filed his Motion to Compel Rule 30(b)(6) Testimony (Document Number 205), which the Court shall consider as a cross-motion to MSD's Motion for Protective Order. Accordingly, MSD's Motion for Protective Order (Document Number 118)[1] and Dr. Braun's Motion to Compel (Document Number 205) are now currently pending. Given the rapidly approaching deposition dates, the parties have

---

[1] Docketed as a Notice of Objection To Plaintiff's Notice of Rule 30(b)(6) Deposition of Defendant MSD and converted to a Motion For Protective Order as set forth above.

requested an expedited ruling and have agreed to incorporate the information previously set forth in their briefing related to MSD's Notice of Objection to Dr. Braun's 30(b)(6) Deposition of MSD.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 30(b)(6), a party may notice the deposition of a corporation and with "reasonable particularity" must specify the topics to be addressed at the deposition.  *See* Fed. R. Civ. P. 30(b)(6).  The corporation must in good faith provide a knowledgeable person, or persons, to appear at the deposition prepared to "answer questions in a non-evasive manner about the designated subject matter."  *Raytheon Aircraft Co. v. United States, 2007 U.S Dist. LEXIS 661456 \*10-11 (citing Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524, 527 (D. Kan. 2006); *see also* Fed. R. Civ. P. 30(b)(6) (stating the named corporation must designate "one or more officers, directors, or managing agents, or designate other persons who consent to testify on [the corporation's] behalf.").

In this case, Dr. Braun has designated forty-eight (48) topics that he intends to address at the April depositions of MSD's two 30(b)(6) designees.  Dr. Braun has fourteen (14) hours within which to conduct his depositions, and the Court has authorized Dr. Braun to allot his time between the two designees as he sees fit.  However, given the considerable number of topics designated in conjunction with the limited time provided, the Court encourages Dr. Braun to make a calculated judgment and strategically parcel out the allotted time in relation to the significance of the topics.

In considering MSD's Motion For Protective Order and Dr. Braun's Motion To Compel, the Court adopts Dr. Braun's division of MSD's objections into four main categories:  (1) MSD's

objection to testimony on topics related to its alleged pattern and practice of using agreements with doctors to increase sales; (2) MSD's objection to testimony about its responses to discovery and information produced in this case; (3) MSD's objection to testimony related to its agreement with Dr. Braun to develop his Concave device; and (4) MSD's objection to testimony on topics that it maintains would implicate privileged communications or work product.  The Court shall address each objection and the topics related thereto herein.[2]

**(1)    Topics Regarding MSD's Alleged Pattern and Practice Of Using Agreements To Increase Sales: Topics 12, 25 and 40.**

Topic 12 seeks testimony regarding "MSD's use of royalty, licensing and/or consulting agreements or other agreements with physicians as a mechanism to secure physician loyalty to using and purchasing MSD productions during the period 1999 to the present." (Document Number 118-1).  MSD objects to this topic arguing that it is unaware of any institutional policy utilizing agreements to secure physician loyalty, and therefore it is impossible for its designees to testify on this subject matter (Document Number 118).  Additionally, MSD cites to the substantial burden involved in preparing for this testimony since it would require the designees to conduct "a review of MSD's motivations for entering every one of its licensing or consulting agreements over the last thirteen years." (Document Number 139 at 5).  Dr. Braun responds that

---

[2]Pursuant to Federal Rule of Civil Procedure 26(c), the standard of review allows the court, "upon a showing of good cause, to enter an order protecting a party or person 'from annoyance, embarrassment, oppression, or undue burden or expense.'  But the rule does not permit the court to issue such an order to protect a party from having to provide discovery on topics merely because it's argued that those topics are overly broad or irrelevant, or because it's argued the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence.  That is, irrelevancy and overbreadth are objections more appropriately addressed in the context of a motion to compel." *State of New Jersey v. Sprint Corp., 2010 U.S. Dist. LEXIS 14890 *4* (internal quotations and citations omitted).

Topic 12 is relevant to its theory that MSD entered into royalty, licensing and/or consulting agreements with physicians solely in order to increase sales and without any intent to perform (Document Number 122).

The Court recognizes that this topic is a key component of Dr. Braun's case and, correspondingly, its relevance. That being said, as indicated by MSD's opposition, MSD's 30(b)(6) deponents will likely deny that any practice exists. Therefore, to the extent the topic goes to whether the corporation has or does maintain such a practice, it is permissible. From the Court's point of view, a denial by MSD that no practice exists or has existed would end the inquiry as to this topic. If Dr. Braun intends to ask MSD concerning specific agreements, the topic does not, as drafted, provide the "reasonable particularity" such would require. Accordingly, Dr. Braun's Motion To Compel granted in part as to Topic 12, and MSD's Motion For Protective Order is denied.

Topic 25 seeks information related to "MSD's hourly fees for surgical consulting by spine surgeons for MSD's benefit during the period 1999 to 2007." (Document Number 118-1). MSD objects to this topic, arguing that the amount of hourly fees paid to spinal surgeons has no bearing on the claims and defenses in this case and is therefore irrelevant (Document Number 118). Further, MSD asserts that preparation for the topic is unduly burdensome and would require the deponents to review every consulting agreement that MSD entered into with spinal surgeons over an eight year period (Document Number 139). Dr. Braun responds that the information is directly relevant to his theory that MSD induced physician loyalty through the use of consulting fees and there is no reason why identification of hourly rates paid is not readily available information (Document Number 122).

While recognizing the somewhat broad nature of this topic, the Court finds the information is a relevant component of Dr. Braun's theory of the case.  Specifically, Dr. Braun's theory is that such payments may constitute a mechanism by which physician loyalty is achieved.  Whether such theory will be ultimately be successful is not the primary focus of this analysis.  Rather, it is whether such evidence may have a reasonable bearing on Dr. Braun's claims.  The Court concludes, at this point, that it does.  Further, while the topic relates to a potentially large group of agreements over a significant period of time, the Court is not persuaded that it is so broad and burdensome as to exclude it from consideration.  The Court grants Dr. Braun's Motion to Compel and denies MSD's Motion For Protective Order.

Topic 40 seeks testimony on "MSD's settlements with the Department of Justice arising from allegations that MSD violated any anti-kickback statute."  (Document Number 118-1).  MSD asserts that corporate testimony on this topic is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence (Document Number 118).  Dr. Braun supports his claim of relevance by referencing previously submitted media reports indicating that MSD used consulting agreements to induce physician loyalty (Document Numbers 122, 64-2, 64-3, 64-4).

On this point, the Court agrees with MSD.  As far as the Court can discern, there are no allegations that "kickbacks"[3] were at issue in Dr. Braun's relationship with MSD.  The Court recognizes that Dr. Braun may argue that alleged misconduct or admissions of misconduct

---

[3]Kickback is defined as defined as "[a] return of a percentage of a sum of money already received, usually as a result of coercion or a secret agreement."  THE AMERICAN HERITAGE COLLEGE DICTIONARY 746 (3rd ed. 1997).  "A form of bribery in which a percentage of the revenues from a contract or other financial award is illicitly returned to the person awarding the contract or benefit."  Definition of *kickback*, LAW DICTIONARY, http://www.law.yourdictionary.com/kickback (last visited, April 11, 2013).

generally (if any) bear on MSD's overall practices. However, aside from such, the Court finds that those general claims have insufficient relevance to the issues in this case and, therefore, Court grants MSD's Motion for Protective Order and denies Dr. Braun's Motion to Compel. In short, permitting such topic to be addressed at the deposition would result in an undue burden on MSD based on the lack of direct or meaningful relevance.

**(2)   Topics Regarding MSD's Responses To Discovery And Information Produced In This Case: Topics 1, 2, 4, 7, 8, 9, 10, 15, 27, 32, and 41-44.**

Topic 1 seeks testimony regarding "MSD's responses to Dr. Braun's written discovery requests and the sources of documents that MSD searched to respond to Dr. Braun's discovery requests." (Document Number 118-1).[4] MSD objects on the grounds that Topic 1 is vague, ambiguous, overly broad, unduly burdensome and imposes a duty of preparation beyond that contemplated under the Federal Rules of Civil Procedure (Document Number 118). MSD asserts that requiring its designees to prepare regarding the details of every single discovery response unfairly shifts the burden entirely to MSD (Document Number 139). Dr. Braun counters that the sheer number of documents does not excuse MSD from its obligation to respond to questions regarding productions (Document Number 122). Instead, Dr. Braun argues that it is precisely because of the large number of documents that MSD must be required to provide testimony explaining how the productions relate to the positions taken by MSD. *Id.*

While the "liberal discovery allowance of the Federal Rules do not permit a recipient of discovery requests to fulfill its discovery obligations by failing to conduct a search for answers

---

[4]In "Plaintiff's Notice Of Clarification Of Rule 30(b)(6) Deposition Topics" Dr. Braun clarifies that with respect to Topic 1, Dr. Braun does not intend to question MSD about its written responses to Interrogatories 13, 14, 16, 32 or 35 or Requests For Production 28, 65, 75, 77, 78, 85, 91, 126 and 131 (Document Number 219).

and then stating it does not know the answer[, the Rules also] preclude [the] proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden." *SmithKline Beecham Corporation v Apotex Corp.,* 2000 U.S. Dist LEXIS 667 *27 (internal quotations and citations omitted). Thus, while Dr. Braun is correct that the sheer volume of productions alone does not mandate protection, the issue of burden and utility does.

Ultimately, the Court concludes that the burden placed upon deponents to prepare for Topic 1 outweighs the utility stemming therefrom. Dr. Braun has submitted 35 interrogatories and 140 document requests, and MSD has produced more than 89,000 pages of documents. To prepare and review all documents would place an "excessive burden" on MSD, especially in light of the fact that Dr. Braun could readily obtain the same information through alternate forms of discovery. *Id.* at *29; *see also* Fed. R. Civ. P. 26(b)(2)(C)(i),(iii) (requiring court to limit extent of discovery that can be obtained from a source that is less burdensome, or where burden or expense of proposed discovery outweighs its likely benefit); *Resolution Trust Corp v. Souther Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir. 1999) ("Rule 30(b)(6) streamlines the discovery process."). As a result, as to Topic 1, the Court grants MSD's Motion for Protective Order and denies Dr. Braun's Motion To Compel as to Topic 1.

Topic 2 seeks "verification of authenticity of all documents MSD has produced in this litigation, including but not limited to documents produced in response to Dr. Braun's written discovery requests and bearing an MSD bates number, as genuine copies of documents MSD has kept and maintained in the normal course of its business together with the identification of any documents MSD has produced to Dr. Braun bearing an MSD bates number that MSD contends

are not genuine copies of documents capable of authentication by MSD." (Document 118-1). MSD argues that it is exceedingly burdensome to require a corporate witnesses to authenticate every document produced. Dr. Braun proposes that "to the extent that MSD stipulates it documents are authentic, genuine copies of documents kept in the normal course of business, Dr. Braun will accept such stipulated authentication." (Document Number 122 n. 4).

  The Court finds that stipulation is the most efficient method of verifying the authenticity of the documents, and the motion to protect or compel testimony related to this topic is deemed at this time to be moot based on the stipulation.

MSD contends that Topics 4,[5] 7-10,[6] 15,[7] 27,[8] 32[9] and 41-44[10] all improperly "ask a

---

[5] Topic 4 seeks testimony on "communications, meetings, negotiations and discussions between Dr. Braun and MSD or any of its representatives between October 1, 1999 and March 30, 2000 including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." (Document Number 118-1).

[6] Topic 7 seeks testimony on "MSD's marketing strategies for Fusionless Devices including that Bates Number of any documents MSD has produced it believes provides information relating to this topic." (Document Number 118-1). Topic 8 seeks testimony on "MSD's efforts to obtain regulatory approval of the Invention through the FDA including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." *Id*. Topic 9 seeks testimony on "MSD's efforts to obtain regulatory approval of Fusionless Devices other than the invention through the FDA including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." *Id*. Topic 10 seeks testimony "MSD's analysis of the potential for development of any Fusionless Devices, including Dr. Braun's Invention, to cannibalize MSD's market share in any other spinal device market, including MSD's market for fusion instrumentation and including the Bates Number of any documents MSD has produced it believes provides information relating to this topic. *Id*.

[7] Topic 15 requests information on "MSD's total sales involving Dr. Braun while he was affiliated with the University of Utah between the following intervals: January 1, 1999 and December 31, 2004; and January 1, 2004 and December 31, 2006, including the Bates Number of any documents MSD has produced it believes provides information relating to this topic. (Document Number 118-1).

[8] Topic 27 seeks "MSD's communications to Dr. Braun that his invention did not work, or was otherwise technically infeasible and the source of information MSD has relied upon to reach the conclusion that Dr. Braun's invention did not work or was otherwise technically infeasible including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." (Document Number 118-1).

[9] Topic 32 requests testimony on "MSD's involvement in the efforts to obtain a patent for the Concave Device, MSD's analysis of patent claims associated with Braun concave device including the Bates Number of any documents MSD has produce it believes provides information relating to this topic." (Document Number 118-1).

[10] Topics 41 requests testimony on "MSD's estimates of the cost of performing an FDA (IDE or 510(k)) study on Dr. Braun's Invention including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." (Document Number 118-1). Topic 42 seeks "MSD's historical average cost of performing an FDE (IDE or 510(k)) study on any spinal implant between 1999 and 2009 including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." *Id.* Topic

designee to come [to the deposition] prepared to recite, upon request, ranges of bates numbers representing specific categories and topics of documents produced in this litigation." (Document Number 139 at 4). MSD suggests that these topics are more easily satisfied through Dr. Braun's own document search and that requiring designees to identify, by bates number, documents previously provided to MSD would require an analysis of more than 89,000 pages—a burden not countenanced under the Federal Rules. Dr. Braun argues that the sheer number of documents does not excuse MSD from providing designees whom Dr. Braun can question on MSD's responses to his discovery requests (Document Number 122).

While the Court finds the substance of Topics 4, 7, 8, 9, 10, 15, 27, 32, and 41-44 to be relevant, it also finds that requiring MSD to provide the bates number of all responsive documents is unduly burdensome. Given that Dr. Braun has the stamped documents in his own possession, any such requirement improperly shifts a burden to MSD. While during the course of the deposition specific documents may be referenced and discussed, the Court does not require the designees to familiarize themselves with every bates range for documents pertaining to these topics. In sum, the Court concludes that the burden in providing the bates numbers outweighs any benefit of facilitating that exercise during the deposition. *See* Fed. R. Civ. P. 26(b)(2)(C)(i),(iii). Accordingly, the Motion To Compel is granted in part as to Topics 4, 7, 8, 9, 10, 15, 27, 32, and 41-44 and the Motion For Protective Order is granted to the extent that it is

---

43 asks for testimony on "MSD's projected annual sales of the Invention, if it were developed and commercialized, and its calculations of royalties that would be paid to Dr. Braun and/or other physicians for such sales including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." *Id.* Topic 44 asks for "the reasons for the seven-year delay between the time the License Agreement was executed until the issuance of the patent relating to Dr. Braun's Invention including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." *Id.*

unduly burdensome and therefore the designees are not required to provide the bates numbers of all documents relied upon.

**(3) Topics Regarding MSD's Conduct With Respect To The Concave Device: Topics 6,[11] 32[12] and 33[13]**

Topics 6, 32 and 33 relate to Dr. Braun's development of the Concave Device, an invention that Dr. Braun licensed to MSD's affiliate SDGI.[14] Dr. Braun argues that SDGI's conduct under the parties' Concave Device agreement is relevant to establish MSD's pattern of entering into agreements without an intent to perform (Document Number 122). In response, MSD argues that Dr. Braun's claim relating to the Concave Device was dismissed and therefore any topics related thereto have no legal bearing on this case (Document Number 139).

Given the dismissal of the claim relating to SDGI and the Concave Device, the Court concludes that Dr. Braun has not carried his burden to support the relevancy of these topics. Specifically, inquiries related to an entity affiliated with MSD for the purpose of making conclusions about MSD's own actions is too speculative to support Dr. Braun's inquiry into these topics. For these reasons, Dr. Braun's Motion To Compel is denied and MSD's Motion For Protective Order is granted as to Topics 6, 32 and 33.

---

[11] Topic 6 requests information on "[t]he relationship between MSD and SDGI and/or Warsaw Orthopedic." (Document Number 118-1).

[12] Topic 32 seeks information on "MSD's involvement in the efforts to obtain a patent for the Concave Device, MSD's analysis of patent claims associated with Braun concave device including the Bates Number of any documents MSD has produced it believes provides information relating to this topic." (Document Number 118-1).

[13] Topic 33 requests information on "MSD's involvement in efforts to develop and commercialize the Concave Device." (Document Number 118-1).

[14] SDGI is currently known as Warsaw Orthopedic (Document Number 122).

**(4)     Topics That MSD Contends Implicate Privileged Communications And Work Product: Topics 47 and 48[15]**

Topic 47 requests that MSD's corporate designees provide "[i]nformation in MSD's possession that MSD may rely upon to attack, impugn or otherwise impeach Dr. Braun's character." (Document Number 118-1).  MSD argues that the request is vague and ambiguous and improperly seeks legal interpretations or conclusions from a fact witness (Document Number 118).  Further, MSD asserts that this topic seeks information produced by counsel and is therefore subject to the protections of the work product and attorney-client privileges.  In response, Dr. Braun contends that he is entitled to explore those topics not protected by a privilege and currently there is no specific basis for a privilege objection (Document 122).

Topic 48 seeks information on "[t]he legal and factual basis for Defendants' affirmative defenses in its Answer." (Document Number 118-1).  Similar to its arguments with respect to Topic 47, MSD asserts that inquiry into the basis for its affirmative defenses seeks legal interpretations from fact witnesses and implicates both the attorney client and work product privileges (Document Number 139).  MSD also argues that the topic is overbroad and preparation would be unduly burdensome (Document Number 118).

While the Court recognizes MSD's privilege concerns and the difficulty inherent in determining when and where the privilege may arise, the Court concludes that at this juncture the objections remain speculative.  A party "asserting the work-product doctrine has the burden of proving its applicability to that party's situation." *In re Grand Jury Proceedings,* 616 F.3d 1172,

---

[15] In his briefing, Dr. Braun included Topic 1 and Topic 32 in this category of topics.  However, as previously set forth in the Ruling MSD's Motion For Protective Order has been granted and Dr. Braun's Motion to Compel has been denied as to Topics 1 and 32 on other grounds.  *See* page 4, 10.

1184 (10th Cir. 2010).  Here, however, MSD is unable to prove applicability because, other than a general notice of topic, there are no specific documents or questions at issue.  Instead, if during the deposition MSD feels that "a question calls for attorney work product [or attorney-client privilege], then it can exercise an individualized claim to privilege, as is proper." *iFreedom Direct Corp. V. First Tenn. Bank Nat'l Ass'n,* 2012 U.S. Dist LEXIS 98714 *10.  Until an actual specific objection has been presented, MSD's claim of privilege is denied.

Additionally, the Court denies MSD's claim of undue burden with respect to Topic 48 and distinguishes that conclusion with its ruling on Topic 1.  As to Topic 1, the Court concluded that the burden placed upon the designees to prepare for the deposition clearly outweighed the utility of the inquiry.  The Court concludes that those same concerns, however, are not as readily apparent with respect to Topic 48.  First, the parameters of the inquiry, while significantly more limited that Topic 1, have been even further limited by Dr. Braun's Notice of Clarification.[16] Second, there is a clear overlap between affirmative defenses, and support for the defenses is within the purview of MSD.   As a result, the burden imposed on deponents is less than the burden in Topic 1 and therefore does not outweigh the utility of the inquiry.  For these reasons, Dr. Braun's Motion To Compel Topics 47 and 48 is granted and MSD's Motion For Protective Order is denied as to these two topics.

---

[16] In Plaintiff's Notice of Clarification Of Rule 30(b)96) Deposition Topics, Dr. Braun limits its inquiry with respect to Topic 48 and indicates that Dr. Braun "does not intend to question MSD about it Affirmative Defenses number 5, 1,17, 19, 24, 27, 29, 30 or 38." (Document Number 219).

## **CONCLUSION**

It is hereby ORDERED:

Plaintiff Dr. Braun's Motion To Compel is granted as to Topics: 25, 47, 48 and granted in part as to Topics 4, 7, 9, 10, 12 15, 27, 32, 41-44.

Defendant MSD's Motion For Protective Order is granted as to Topics: 1, 6, 32, 33, 40 and granted in part as to Topics 4, 7, 9, 10, 15, 27, 32, 41-44.

DATED this 12th day of April, 2013

_____
Dustin Pead
United States Magistrate Judge