IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN T. BRAUN, M.D.,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>MEDTRONIC SOFAMOR DANEK, INC.,<br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br><br>Case No. 2:10-cv-1283 |

On September 20, 2012, Defendant Medtronic Sofamor Danek, Inc. (Medtronic) filed a

Motion to Amend or Correct its Answer in the above-captioned matter (Dkt. No. 66).

Medtronic sought leave to add two affirmative defenses and three counterclaims, the gravamen of

which was an allegation that Plaintiff John T. Braun, M.D., does not own the rights to the

invention that he disclosed and licensed to Medtronic.  On January 2, 2013, the Honorable Dustin

B. Pead issued an Order denying Medtronic's Motion as untimely (Dkt. No. 152).  Medtronic

objected to the Magistrate Judge's ruling and the court took up the matter at a hearing on January

30, 2013.  The court also heard argument on a number of additional objections filed by both

parties to other aspects of Judge Pead's Order.

The court overruled every objection to Judge Pead's decision except for Medtronic's

Objection to the denial of its Motion to Amend, which the court took under advisement.  The

court ordered the parties to submit further briefing on a number of issues related to this matter,

including the proper standard of review that the court should apply, the facts in the record that

support the parties' respective positions, and any arguments the parties wished to make about whether Medtronic's additional counterclaims and defenses would be futile.

The court has carefully considered this additional briefing, as well as the record before Judge Pead.  Based on these materials, and for the reasons stated below, the court SUSTAINS Medtronic's Objection to Judge Pead's decision and GRANTS Medtronic leave to amend its Complaint to add the requested defenses and counterclaims.

BACKGROUND

I.    **Procedural History**

This lawsuit involves a dispute between Dr. Braun and Medtronic over a licensing agreement that the parties entered into concerning Dr. Braun's concepts for the fusionless treatment of scoliosis.[1]  Dr. Braun recorded his ideas at 12:01 a.m. on October 1, 1999, which was the day after his discharge from the Air Force on September 30, 1999.  Medtronic seeks leave to amend its Answer to include two new defenses and three new counterclaims that address the question of ownership of Dr. Braun's inventions.  Medtronic's position is that Dr. Braun did not correctly represent to Medtronic that he was the sole owner of "all right, title and interest in and to the Licensed Patents" because he developed his inventions while working for the Air Force.  Medtronic's thirty-eighth defense would assert that Dr. Braun's claims are barred because of a breach of express warranties with Medtronic; the thirty-ninth defense would assert that Dr. Braun did not own the rights to the concepts he disclosed to Medtronic.  The three new counterclaims include: (1) breach of express warranties because the Air Force, and not Dr.

---

[1]The court notes that the parties variously refer to Dr. Braun's concepts as the "Invention" or the "Concepts."  The court makes no distinction between these terms since this opinion does not address the status of Dr. Braun's ideas.

Braun, owned the inventions at the time Dr. Braun licensed them to Medtronic; (2) declaratory

judgment holding that the Air Force, and not Dr. Braun, is the lawful owner of the inventions;

and (3) declaratory judgment finding that there has been a failure of consideration under the

parties' license agreement since Dr. Braun did not own the inventions.

Judge Pead denied Medtronic's Motion on the grounds that the amendment was untimely

because it was filed over six months after the deadline to amend pleadings had passed.  (Order,

Jan. 2, 2013, at 17, Dkt. No. 152.)  Judge Pead reached his decision after finding that Medtronic

knew or should have known about Dr. Braun's work in the Air Force.  The Magistrate Judge

cited a deposition of Troy Drewry, who was the Senior Product Development Engineer at

Medtronic.  Judge Pead found that, in both his deposition and in letters to Dr. Braun, Mr. Drewry

demonstrated knowledge that Dr. Braun was working for the Air Force when Medtronic

contacted him to discuss his work.  As a result, Judge Pead found that Medtronic "knew or at

least should have known as of September 1999 of Dr. Braun's work in the Air Force."  (*Id.*)

While Medtronic argued that it filed its Motion shortly after receiving a number of handwritten

notes from Dr. Braun in discovery, Judge Pead was not persuaded by Medtronic's stated reason

for the delay because he found that there was "no demonstrable link between Dr. Braun's

undated notes and his time in the Air Force."  (*Id.*)  Judge Pead did note some concern about the

timing of Dr. Braun's documentation of his invention, but concluded that Medtronic still should

have known about the possible ownership issues: "While the court shares some wariness

regarding Dr. Braun's 12:01 a.m. epiphany the morning after his discharge, the inferences

stemming therefrom should have at that time prompted Medtronic's awareness of the ownership

issues."  (*Id.*)

## II.      Factual Background

The parties submitted briefing on the facts present in the record that provide evidence concerning what Medtronic knew in September 1999 about Dr. Braun's work at the Air Force. These facts include the letters and deposition testimony from Troy Drewry that Judge Pead discussed in his Order.  In addition, Dr. Braun cites the deposition of Hugh Shaum, Medtronic's area sales manager for Utah in 1999, who testified that he believed that Dr. Braun began work at the University of Utah "when his tour was up" in the Air Force.  (Shaum Dep. 80:24-81:16, Ex. D to Dkt. No. 188.)  And Mike Sherman, Medtronic's former head of technology development, testified that Medtronic had a due diligence process in place to "vet whether or not the [intellectual property] was available for acquisition and whether there were other encumbrances on it."  (Sherman Dep. 24:10-18, Ex. C to Dkt. No. 188.)

Medtronic emphasizes that it did not know the precise end date of Dr. Braun's employment with the Air Force until it received Dr. Braun's answers to discovery.  Medtronic alleges that Dr. Braun disclosed his discharge date in response to the interrogatories that he was served on June 11, 2012.  (*See* Pl.'s Resp. to Def.'s First Discovery Requests, Ex. A to Dkt. No. 197.)  In addition, Medtronic cites portions of Dr. Braun's deposition that discuss his motivation to write down his ideas before he began work at the University of Utah.  (Braun Dep. 80:25-81:23, Ex. C to Dkt. No. 197.)

The parties provided a summary of the content of the undated handwritten notes that Medtronic alleges were created during Dr. Braun's time in the Air Force.  The court will discuss these notes in its analysis below.  Finally, Dr. Braun submitted a Declaration from Michael Camara, the Chief of the Reserve Service Programs for the United States Air Force Reserves,

who stated that "Dr. Braun did not have any further obligation to the Air Force of any kind after September 30, 1999." (Camara Decl. ¶ 4, Ex. C to Dkt. No. 148.)

ANALYSIS

## I.   Standard of Review

Under Rule 72 of the Federal Rules of Civil Procedure, a district judge, upon receiving an objection to a non-dispositive pretrial ruling, must "modify or set aside any part of that order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). In contrast, when considering an objection to a dispositive pretrial ruling, the district court must review the ruling using a de novo standard of review. Fed. R. Civ. 72(b). The parties agree that many motions to amend a complaint are not dispositive. *See Doe v. Nevada Crossing*, 920 F. Supp. 164, 165-66 (D. Utah 1996). But the parties also agree that the Tenth Circuit has not directly addressed whether this specific type of motion, namely a motion to amend an answer to add an affirmative defense or a counterclaim, is "dispositive" under Rule 72. Dr. Braun argues that the court should review Judge Pead's decision for abuse of discretion. But Medtronic asserts that Judge Pead's ruling is dispositive because it would have the effect of permanently barring Medtronic's proposed counterclaims. As a result, Medtronic contends that the court must review Judge Pead's Order de novo.

Both parties point to cases supporting their position that were decided by district courts in other circuits. In *Credit Suisse First Boston, LLC v. Coeur D'Alene Mines Corp.*, 2005 WL 323714 (S.D.N.Y. Feb. 10, 2005), the United States District Court for the Southern District of New York applied a clearly erroneous standard to a magistrate judge's decision on a defendant's motion for leave to amend its answer to assert an additional affirmative defense and five

counterclaims.  In contrast, the United States District Court for the Southern District of Mississippi applied a less deferential standard of review[2] to a magistrate judge's decision and concluded that the magistrate judge had not appropriately considered the requirement that a party be allowed to amend when justice so requires.  *Hunt Energy Corp. v. Crosby-Mississippi Resources, Ltd.*, 732 F. Supp. 1378 (S.D. Miss. 1989).  Accordingly, the Mississippi District Court reversed the magistrate judge's decision.

Recognizing that the law is somewhat unclear on this question, both parties have attempted to draw meaningful distinctions between cases with conflicting outcomes.  Dr. Braun argues that, when courts have found that denial of leave to amend is dispositive, they have done so only when the magistrate judge's ruling is based on futility.  Courts applying this reasoning state that "by declaring a proposed amendment futile, the magistrate judge has effectively engaged in the Rule 12(b)(6) analysis and has decided the amendment fails to state a claim, thus making the decision dispositive."  *Hall v. Norfolk Southern Railway Co.*, 469 F.3d 590, 595 (7th Cir. 2006) (rejecting this position, but summarizing a line of opinions from other circuits to the contrary).  Dr. Braun contends that because Judge Pead based his decision on the timeliness and not the futility of Dr. Braun's amendment, the court should find that his decision was not dispositive.

Medtronic disagrees and argues that the court must decide whether a given motion is

---

[2]Dr. Braun argues that the Mississippi court did not apply a de novo standard, but simply decided that the court was "not constrained to be quite as deferential to the magistrate's ruling as it would ordinarily be."  *Hunt Energy Corp.*, 732 F. Supp. at 1390, n. 18.  But whether the standard of review that the Mississippi court applied is properly characterized as de novo or simply less deferential, the court's decision still resulted in a reversal of the magistrate judge's decision.

dispositive by focusing on the effect of the magistrate judge's decision.  To support its position, Medtronic cites a Tenth Circuit opinion holding that a magistrate judge's order on a motion for sanctions that struck the plaintiff's pleadings should be reviewed under a de novo standard because the sanction order was dispositive: "Motions not designated on their face [as dispositive] are nevertheless to be treated as such a motion when they have an identical effect."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988).  Similarly, the Tenth Circuit held that a magistrate judge's decision to remand a case was dispositive because, "insofar as proceedings in the federal court are concerned, the order is the functional equivalent of an order of dismissal. . . ."  *First Union Mortg. Corp. v. Smith*, 229 F.3d 992 (10th Cir. 2000).  Medtronic contends that, since it cannot assert its claims elsewhere,[3] Judge Pead's decision has a dispositive effect and should be treated as such.

Medtronic also argues that Judge Pead went beyond a traditional timeliness analysis when he resolved disputed issues of fact concerning what Medtronic knew or should have known about Dr. Braun's ownership status in 1999.  According to Medtronic, Judge Pead's analysis more closely resembles a futility determination, since many of the arguments that Dr. Braun makes about the futility of Medtronic's amendments hinge on the question of when Medtronic knew or should have known about the evidence supporting its counterclaims.  As a result, Medtronic argues that the court should review Judge Pead's Order de novo, even if the court is convinced by Dr. Braun's proposed distinction between motions to amend that are denied as untimely and those that are denied as futile.

---

[3]The court agrees with Medtronic that its counterclaims are compulsory under Rule 13 of the Federal Rules of Civil Procedure since they "arise[] out of the transaction or occurrence that is the subject matter" of Dr. Braun's claims.  Fed. R. Civ. P. 13(a).

The court finds the weight of authority on this question of unsettled law to be slightly in Medtronic's favor.  The court agrees with Medtronic that, in both *Ocelot Oil* and *First Union Mortgage*, the Tenth Circuit focused on the effect that a magistrate judge's ruling had on a given motion and not on the form of that motion.  Here, the court finds that the effect of Judge Pead's ruling is clearly dispositive because his decision would bar the assertion of Medtronic's compulsory counterclaims.  *See Doelle v. Mt. States Tel. & Tel.*, 872 F.2d 942, 946 (10th Cir. 1989) (holding that a compulsory counterclaim "must be raised before the current tribunal or be forever lost to the claimant").  As a result, the court reviews Judge Pead's Order de novo.  But given the uncertainty in the law on this issue, the court notes that its decision is not dependent on the standard of review that the court applies.  For the reasons stated below, the court would sustain Medtronic's Objection even if the court applied a more deferential standard of review.

## II.   Timeliness of Medtronic's Proposed Amendment

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Reasons that a court may deny leave to amend include, among others, "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Tenth Circuit has found that "untimeliness alone is a sufficient reason to deny leave to amend."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993).  But in instances where timeliness is the only factor at play, a court should "focus[] primarily on the reasons for the delay."  *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).  Denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay."  *Frank*, 3 F.3d at

8

1365-66.

The court agrees with Judge Pead that Medtronic did not provide an adequate explanation for the delay on the basis of Dr. Braun's undated handwritten notes that were uncovered during discovery. The court has carefully considered the evidence that allegedly supports Medtronic's contention that the notes were created during Dr. Braun's time in the Air Force. This evidence includes the similarity between the notes and Dr. Braun's later disclosure to Medtronic, as well as the references in the notes to patients that Dr. Braun treated and work that he performed while in the Air Force. While these facts do provide some support for Medtronic's allegation that Dr. Braun wrote the notes while working for the Air Force, the evidence is simply not strong enough to explain why these undated documents suddenly caused Medtronic to realize that Dr. Braun may have breached his ownership warranty. If Medtronic already knew that Dr. Braun started work at the University immediately after his discharge from the Air Force, then Medtronic should have been aware of the potential ownership issues at the time that Medtronic filed its Answer. And if Medtronic was unaware of these issues, then it must have thought there was some gap between the two periods of Dr. Braun's employment. Dr. Braun could have written the undated notes during this gap just as easily as he could have written them while he was working for the Air Force. Accordingly, the disclosure of these notes during discovery does not justify Medtronic's delay in filing its motion.

But Medtronic emphasizes a second reason for its delay that the court finds more compelling. Medtronic argues that it was not until it received Dr. Braun's answers to Medtronic's First Set of Interrogatories that Medtronic learned that Dr. Braun was discharged from the Air Force on September 30, 1999. Without this knowledge, the fact that Dr. Braun

9

recorded his invention at one minute after midnight on October 1, 1999, simply seems quirky. But given the context of his discharge date, Dr. Braun's actions are much more plausibly the result of a deliberate calculation to avoid ownership issues.  The disclosure of this discharge date during discovery provides an adequate explanation for Medtronic's delay in seeking leave to amend its Answer.

   None of the evidence provided by Dr. Braun sufficiently establishes that Medtronic knew or should have known that the gap between his two periods of employment was so small.  While Mr. Shaum testified that he believed that Dr. Braun began work at the University of Utah "when his tour was up" in the Air Force, this statement does not establish that Medtronic knew that Dr. Braun did not have even a day's gap between employment.  Medtronic may have plausibly believed that Dr. Braun spent several weeks or months between jobs, during which time he could have come up with the ideas for his invention.  Similarly, Mr. Drewry's letter of September 30, 1999, mentions Dr. Braun's future employment at the University, but does not provide any indication that Mr. Drewry believed that Dr. Braun was still working for the Air Force at the time.  Because it is plausible that Medtronic did not realize until discovery that there was a strange coincidence between Dr. Braun's date of discharge from the Air Force and the date on which he recorded his invention, the court finds that Medtronic's Motion to Amend or Correct its Answer was timely.  Medtronic filed its motion while discovery was ongoing and has provided an adequate explanation of why it did not seek leave to amend until six moths after the deadline to amend pleadings had passed.

   Judge Pead shared "some wariness regarding Dr. Braun's 12:01 a.m. epiphany the morning after his discharge," but held that "the inferences stemming therefrom should have at

that time prompted Medtronic's awareness of the ownership issues." (Order, at 17, Dkt. No. 152.) But Judge Pead did not address the impact of Medtronic's assertion that it did not learn of Dr. Braun's discharge date until discovery. It is unclear if Judge Pead considered this argument but found it unpersuasive or if Medtronic failed to highlight its argument in front of Judge Pead with the same force that it has done so in front of this court. The court notes that Medtronic did not emphasize the discharge date realization in its briefing in front of Judge Pead. But given that these facts are in the record—namely, the disclosure of Dr. Braun's discharge date in response to the First Set of Interrogatories and an absence in the record of any information showing that Medtronic was previously aware of this date—the court finds that Medtronic may properly emphasize this point in its Objection to Judge Pead's Order.

Because the court finds that the issue involving the exact timing of Dr. Braun's discharge date is of great importance to the question of what Medtronic knew or should have known when it filed its Answer, the court would normally remand this issue to the Magistrate Judge for consideration of this information. But given that almost seven months have already passed since Medtronic first filed its Motion to Amend or Correct, the court finds that the interests of justice require the court to resolve the issue itself to prevent any further delay. In any event, and as discussed above, the court believes that the law requires it to conduct a de novo review of the material in the record, thereby obviating the need to first seek a more complete record from the Magistrate Judge.

The court has considered a number of other factors in support of its decision to sustain Medtronic's Objection. First, the court has not found any evidence that Medtronic's delay was caused by bad faith or a dilatory motive. Instead, Medtronic has provided a reasonable

11

explanation of why it realized during discovery that it could assert its proposed counterclaims and defenses.  As discussed below, the court also finds that Medtronic's proposed counterclaims are not futile.  Most importantly, the court finds that there are too many issues of disputed fact to resolve an issue of such importance to the case at this stage.  Dr. Braun is of course free to reassert at summary judgment or at trial his contention that Medtronic knew or should have known about any potential ownership issues in 1999.  Dr. Braun may well be successful on this point.  But the court finds that it would be premature to decide these questions now.  Instead, justice requires that Medtronic be allowed a chance to test its disputed factual assertions about what it knew and when.

**III.    Futility of Medtronic's Proposed Amendment**

Even if Medtronic's amendment is timely, the court must still consider whether it could survive a motion to dismiss.  Dr. Braun contends that Medtronic's motion is futile under five different theories.

A.  Equitable Estoppel and Statute of Limitations

First, Dr. Braun argues that Medtronic is equitably estopped from asserting that Dr. Braun does not own his invention.  Second, he contends that any counterclaim by Medtronic or other claim by a third-party related to Dr. Braun's ownership interest is barred by the statute of limitations.  The court is not persuaded by either of these arguments because they both turn on the question of whether Medtronic knew in 1999 that Dr. Braun may have come up with his invention while he was in the Air Force.  As discussed above, the facts surrounding this question are in dispute and deserve to be tested at summary judgment or at a trial.

B.  Air Force Ownership of the Invention

Third, Dr. Braun contends that Medtronic cannot assert the purported rights of the Air Force to Dr. Braun's invention.  Dr. Braun argues that Medtronic has improperly interpreted Executive Order No. 10,096, which determines the allocation of rights to inventions made by government employees.  *See Zacharin v. United States*, 1997 WL 63177, at *6 (Fed. Cir. Feb. 14, 1997) ("[T]he Executive Order provides the exclusive means for determining ownership rights in inventions made by government employees.").  As codified under 37 C.F.R. § 501.6, the Order provides that the government "shall obtain" the rights to any invention made by a government employee:

(i)     During working hours, or

(ii)    With a contribution by the Government of facilities, equipment, materials, funds or information, or of time or services of other Government employees on official duty, or

(iii)   Which bears a direct relation to or is made in consequence of the official duties of the inventor.

37 C.F.R. § 501.6(a)(1).  The second section of this provision states that, in cases where the application of the above criteria do not justify an assignment of all rights and interest in an invention to the government, "the Government agency concerned shall leave title to such invention in the employee, subject however, to the reservation to the Government of a nonexclusive, irrevocable, royalty-free license in the invention with power to grant licenses for all governmental purposes."  37 C.F.R. § 501.6(a)(2).

The third section of this provision provides a presumption about whether the first section or second section should apply to a given invention.  37 C.F.R. § 501.6(a)(3).  Finally, the fourth

13

section states:

> In any case wherein the Government neither:
>
> (i)    Obtains the entire right, title and interest in and to an invention pursuant to the provisions of paragraph (a)(1) of this section nor
>
> (ii)   Reserves a nonexclusive, irrevocable, royalty-free license in the invention, with power to grant licenses for all governmental purposes, pursuant to the provision of paragraph (a)(2) of this section,
>
> the Government shall leave the entire right, title and interest in and to the invention in the Government employee, subject to law.

37 C.F.R. § 501.6(a)(4).

The regulation is unclear as to whether it is self-executing or whether the United States must initiate some action to obtain ownership over an employee's invention. While the first and third sections of the regulation suggest that the United States "shall obtain" presumptive ownership over certain types of inventions, the fourth section suggests that the United States must perform at least some action to obtain this ownership. If it does not, the United States "shall leave" the ownership rights to the employee. The Air Force procedures implementing this regulation that are cited by both parties do not clear up the matter. Rather, the procedures delineate authority within the Air Force related to intellectual property but do not establish the legal effect of Executive Order No. 10,096 on inventions for which the United States has not asserted an ownership claim.

In any event, the application of the Air Force's procedures depends to some degree on the disputed factual matter of whether Dr. Braun came up with his invention while he was a government employee. The Air Force may not have any notice that it has a possible ownership claim over Dr. Braun's ideas, and Dr. Braun has not established that any applicable statute of

limitations has already run on a claim the Air Force may later wish to assert.  As a result, Medtronic's breach of express warranty claim is a live issue.

The court also finds that it would be premature to dismiss Medtronic's declaratory judgment claims on these grounds.  The position of the United States on these issues is unclear, including its position on whether Executive Order No. 10,096 is self-executing, whether it believes it has an enforceable ownership interest in Dr. Braun's ideas, or whether it believes that it has forfeited any rights it may have once had.  Accordingly, it is too soon to know whether Medtronic is barred from asserting Air Force ownership of the invention due to the failure of the United States to take any action to establish its interest.

### C.  Medtronic's Damages

Fourth, Dr. Braun argues that Medtronic has not suffered any damages and that its breach of warranty claim is therefore barred.  But as discussed above, Dr. Braun has not convinced the court that it is impossible for the United States to assert an ownership interest in Dr. Braun's invention at some time in the future.  While Medtronic may find it difficult to show exactly how the value of the ideas it acquired has dropped due to the disputed ownership issues, it should not be precluded from making its case on this point.  In addition, Medtronic argues that it was damaged by paying licensing fees for an invention that may not have been owned by the person who provided the warranty of ownership.  These damages are far less speculative, and Medtronic has therefore properly alleged that it has suffered loss from Dr. Braun's alleged breach of express warranties.

### D.  Failure to Join Indispensable Parties

Finally, Dr. Braun contends that both the Air Force and Warsaw Orthopedic (Warsaw), an

15

affiliate of Medtronic, are indispensable parties and that Medtronic's claims should be dismissed under Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join a party.

The court has discussed above why it is still unclear whether the Air Force must be a party to the litigation in order to assert its rights.  If, for example, the United States obtains presumptive ownership rights over inventions made by government employees in the circumstances discussed in Executive Order No. 10,096, then it appears that the court may grant Medtronic's requested relief without the addition of the Air Force to the lawsuit.  While Medtronic's likelihood of success on its claims may be lessened by its failure to join the Air Force, its claims are not precluded.

The court is more concerned about Medtronic's failure to join Warsaw.  In 2002, Dr. Braun and three other Medtronic employees who were named as co-inventors on the patent assigned their ownership rights to SDGI, an affiliate of Medtronic that was later merged into Warsaw.  (*See* Assignment, Ex. K to Dkt. No. 147.)  Warsaw is now listed as the owner of the patent.  (*See* Patent, Ex. J to Dkt. No. 147.)  Dr. Braun contends that the court cannot adjudicate any ownership rights concerning the patent without Warsaw's participation.

Medtronic responds that it is not asserting any ownership claim, but instead merely seeks to show that Dr. Braun breached his warranties.  But the court cannot see how it can hold that Dr. Braun breached these warranties without holding that the ownership of the patent is at least in question.  Since it seems axiomatic that Warsaw, as the current owner of the patent, would wish to retain its ownership interest clear of any future litigation from the Air Force, the court is not convinced by Medtronic's position that a ruling in its favor on its breach of warranties claim would not have any effect on Warsaw's ownership rights.  In any event, Medtronic has also

16

moved the court for leave to add a counterclaim for declaratory judgment finding that the Air Force, and not Dr. Braun, is the owner of his invention.  Such a ruling would certainly affect whatever rights Warsaw has in the patent.

Dr. Braun argues that the court should dismiss Medtronic's claims because joinder of Warsaw is infeasible.  Before SDGI merged with Warsaw, SDGI was already a party to this lawsuit in a separate claim that was dismissed by stipulation.  Dr. Braun contends that principles of res judicata and collateral estoppel would preclude SDGI and Warsaw from rejoining the suit. The court disagrees.  Medtronic's proposed counterclaims and defenses are entirely distinct from the claim that was earlier dismissed, which related to a separate contract and a separate device. As a result, the court may order joinder of Warsaw under Rule 19(a)(2) of the Federal Rules of Civil Procedure.

Dr. Braun also maintains that this joinder would be highly prejudicial because he has not been able to conduct any discovery of Warsaw.  The court does not see what discovery would be necessary, since the court's main concern in requiring joinder of Warsaw to the lawsuit is that, if it wishes, Warsaw should be allowed to argue that Dr. Braun was the true owner of the invention before the court issues a ruling that could dispute this assertion and thereby affect the value of Warsaw's patent.  The court will, however, allow Dr. Braun to submit a request for additional discovery of Warsaw if he includes a succinct and compelling reason why such discovery should be allowed.  Dr. Braun should submit his request according to the schedule for other discovery requests described below.

## IV.    Undue Prejudice and Delay

The court finds that, at the time Medtronic filed its motion, its proposed amendment

would not have subjected Dr. Braun to any undue prejudice.  The parties were still engaged in discovery and Dr. Braun would have had ample time to conduct any necessary additional discovery.  But given that the parties are now moving towards the deadline for filing dispositive motions, the court is concerned about prejudice to Dr. Braun at this stage.  Dr. Braun argues that the court's decision will require additional depositions and discovery from previously deposed witnesses, Air Force personnel, and Warsaw Orthopedic.  The court agrees that its decision will force new burdens on Dr. Braun, but the court must balance any prejudice to Dr. Braun with the prejudice that Medtronic would face if the court denied it leave to amend for a reason that was not in Medtronic's control.  The delay over the past eight months has not been caused by Medtronic, but by the significant caseloads faced by Judge Pead and the undersigned, who are both newly appointed judges.  Additionally, Dr. Braun has been on notice since September 20, 2012, that Medtronic was attempting to assert these claims and defenses.  As a result, the court will allow Medtronic to amend its Answer.

At the hearing on Medronic's Objection, Medtronic represented to the court that only limited additional discovery would be necessary if the court were to sustain its Objection.  While the court desires to maintain the deadline for filing dispositive motions, the court is aware that Dr. Braun may feel that he cannot adequately obtain the additional discovery he needs by that time.  Accordingly, the court orders each party to submit within fourteen days from the date of this Order a concise list of any additional requested discovery, as well as any requests for an amendment to the current scheduling order.  The parties should include a requested date for trial. On March 27, 2013, the court vacated the current trial setting on October 21, 2013, but the court has kept that date available on its calendar if the parties wish to proceed to trial as originally

18

scheduled.  The court will look to Dr. Braun for guidance on the trial schedule.

 To minimize additional burdens on Dr. Braun, the court is inclined to adopt the strategy used by the United States District Court in the Southern District of Mississippi in the case that Medtronic cited to the court in support of its argument that the court should apply a de novo standard of review to Judge Pead's decision.  In that case, the court allowed the defendants to add a counterclaim but held that,

> in granting the relief requested by the plaintiff, [the court] is relying in part on the representation by defendants that the need for discovery on the matters raised in the counterclaim is minimal, if there is any need at all, and will not unduly delay the proceedings.  To lessen any prejudice to plaintiff which may be caused by the allowance of this amendment, the court is of the opinion that to the extent that reasonable discovery is required, that discovery should be completed within forty-five days of the entry of this order and shall be at defendants' expense.

*Hunt Energy Corp.*, 732 F. Supp. at 1390.  The parties should bear in mind that the court is likely to impose similar conditions on the additional discovery requested in this case.

CONCLUSION

 For the reasons stated above, Medtronic's Objection to Judge Pead's Order is SUSTAINED.  The court GRANTS Medtronic leave to add its proposed affirmative defenses and counterclaims to its Answer.  The court ORDERS Warsaw Orthopedic, Inc., to be joined as a notice party to this lawsuit.  The court further ORDERS the parties to submit their requests for any additional discovery or changes to the scheduling order, including a requested date for trial, within fourteen days from the date of this Order.  Because of the foregoing rulings, the court DENIES AS MOOT Dr. Braun's Motion for Resetting the Trial Date (Dkt. No. 224).

SO ORDERED this 1st day of May, 2013.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge