IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN T. BRAUN, MD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MEDTRONIC SOFAMOR DANEK, INC.,<br><br>　　　　　Defendant. | **MEMORANDUM DECISION & ORDER**<br><br><br>Case No. 2:10-CV-01283<br><br>Judge Robert J. Shelby |

　　　　Following a trial on the merits, a jury returned a verdict in favor of Plaintiff John T. Braun on several causes of action. Included in the jury verdict is an award of punitive damages on Dr. Braun's fraudulent inducement claim against Defendant Medtronic Sofamor Danek, Inc. Dr. Braun and Intervenor Attorney General Sean D. Reyes, acting on behalf of the State of Utah, seek a determination of the applicability of a Utah statute that mandates split-recovery of punitive damage awards. The State contends that the current statute applies, and that the court is required to apportion the punitive damages verdict between Dr. Braun and the State of Utah. Dr. Braun contends a prior version of the statute applies, and that a split-recovery is improper where the prior statute was ruled unconstitutional.

　　　　After careful consideration of the briefing and relevant legal authorities, the court concludes that the statutory provision in effect at the time of Medtronic's fraudulent inducement applies to the jury's award. Because the Utah Supreme Court struck down this statute as

unconstitutional, the court **DENIES** the State's request to apportion the jury's punitive damages award.[1]

## BACKGROUND

The court held a ten-day jury trial in February 2014. During trial, the court ruled that Dr. Braun could proceed on his fraudulent inducement claim against Medtronic, but only insofar as the claim arose out of Medtronic's conduct prior to April 1, 2000, the date on which the parties enter into a License Agreement.[2] At the conclusion of trial, the jury returned a verdict awarding $12,000,000 in punitive damages on the fraudulent inducement claim.[3]

Prior to the entry of judgment, the State filed a motion to intervene in the case for the limited purpose of asserting a statutory interest in the punitive damages award.[4] The State argued that the court should permit it to intervene because a decision concerning apportionment of punitive damages could impair or impede the State's ability to protect its statutory interest.[5] After granting the motion to intervene, the court invited Dr. Braun and the State to submit expedited briefing on the applicability of Utah Code Section 78B-8-201(3).[6]

The split-recovery provision in effect at the time of Medtronic's fraudulent inducement provided: "In any judgment where punitive damages are awarded and paid, 50% of the amount of the punitive damages in excess of $20,000 shall, after payment of attorneys' fees and costs, be remitted to the state treasurer for deposit into the General Fund."[7] Beginning in 1991, the Utah

---

[1] Dkt. No. 594.

[2] Trial Tr. 1414:17-1415:24, Feb. 26, 2014; Trial Tr. 1624:15-1625:11, Feb. 27, 2014.

[3] Dkt. No. 573.

[4] Dkt. No. 589.

[5] *Id.*

[6] *See* Dkt. Nos. 592, 593.

[7] *Id.* § 78-18-1 (1989).

Legislature made minor amendments to the language of the split-recovery provision, in part to clarify how the State would receive its interest in punitive damages.[8] In 2005, the Utah Supreme Court held that the provision in effect prior to 1991 was unconstitutional.[9] Recognizing the practical and constitutional issues arising out of the prior statute, the Legislature again amended the split-recovery provision in 2008.[10] The split-recovery provision now provides:

> In any case where punitive damages are awarded, the court shall enter judgment as follows: (i) for the first $50,000, judgment shall be in favor of the injured party; and (ii) any amount in excess of $50,000 shall be divided equally between the state and the injured party, and judgment to each entered accordingly.[11]

The State and Dr. Braun each filed a memorandum of law on the applicability of the split-recovery provision.[12] The State maintains that this court should apply the current split-recovery provision because the State's right to claim a portion of a punitive damages award necessarily accrues on the date that the jury returns its verdict. If this split-recovery provision applies, the court would be required to apportion $5,975,000 to the State and $6,025,000 to Dr. Braun.

In contrast, Dr. Braun argues that the current version of the split-recovery provision does not apply to the verdict in this case. According to Dr. Braun, the statutory provision in effect at the time his fraudulent inducement claim accrued must apply to the verdict because statutes that affect substantive rights should not be applied retroactively absent clear legislative intent. Because the Utah Supreme Court concluded that the 1989 version of the split-recovery provision,

---

[8] *See, e.g.,* 2004 Utah Laws Ch. 164 (eliminating "paid" language and granting State rights of a judgment creditor); *see also Smith v. Price Dev. Co.*, 125 P.3d 945, 948 n.2, 950 n.5 (Utah 2005) (discussing legislative history).

[9] *Smith*, 125 P.3d at 949-53.

[10] 2008 Utah Laws Ch. 260; *Punitive Damages Amendment*s: *Hearing on S.B. 155 Before the Sen. Comm. on the Judiciary, Law Enforcement, and Criminal Justice*, 57th Legis., Gen. Sess. (Utah 2008) (statements of Sen. Lyle W. Hillyard and Director Kevin V. Olsen), http://utahlegislature.granicus.com/MediaPlayer.php?clip_id=13424&meta_id=506357.

[11] Utah Code Ann. § 78B-8-201(3)(a) (2011).

[12] Dkt. Nos. 594, 607.

which was in effect at the time Dr. Braun's claim arose, was unconstitutional, Dr. Braun argues that the State is not entitled to any portion of the jury's punitive damages award.

## ANALYSIS

The parties ask the court to resolve whether the allocation of punitive damages between the State and a plaintiff should be governed by the statute in effect at the time of the underlying claim or the date of the jury's verdict. To the court's knowledge, neither the Utah Supreme Court nor Utah Court of Appeals has addressed this issue. Neither party cites to decisions by the Tenth Circuit or other state courts that directly address the issue in this context. Accordingly, as in all diversity cases that raise novel questions of state law, this court must attempt to resolve the legal question before it by anticipating the conclusion the Utah Supreme Court likely would reach.[13]

After careful consideration of the authorities cited by both parties, the court concludes that the Utah Supreme Court likely would resolve this dispute in favor of Dr. Braun for three reasons. First, Dr. Braun's approach is more consistent with other provisions of Utah law. Second, the issue presented is analogous to cases involving punitive damages cap statutes, where courts routinely apply the statute in effect at the time the underlying claim arose. Third, the court concludes that the taking cases cited by the State are inapposite. For these reasons, the court concludes that the State is not entitled to any portion of the jury's punitive damages award in this case as a matter of law.

**I.      EXISTING UTAH CASE LAW**

The parties appear to agree that Utah's split-recovery provision is substantive law, as opposed to a procedural statute.[14] In Utah, the "general rule is that the law establishing

---

[13] *See Copier By & Through Lindsey v. Smith & Wesson Corp.,* 138 F.3d 833, 839-40 (10th Cir. 1998).

[14] *See* Dkt. No. 607, at 6. Where neither party specifically addressed whether the provision is procedural, the court assumes for the purpose of its analysis that the provision is substantive.

substantive rights and liabilities when a cause of action arises, and not a subsequently enacted statute, governs the resolution of the dispute."[15] As a result, the parties focus much of their argument on whether a right to punitive damages accrues at the time the underlying cause of action arose or the time of the verdict.

In an attempt to prove that the current split-recovery provision applies to the verdict in this case, the State maintains that a Utah court would apply the substantive law as it existed on the date that a cause of action accrues.[16] Ordinarily, "a cause of action accrues when a plaintiff could have first filed and prosecuted an action to successful completion."[17] According to the State, its statutory interest in a portion of the punitive damages award must be treated like a traditional cause of action. And because the State could not claim an interest in the punitive damages award until after the jury concluded that punitive damages should be awarded, the State argues that the law governing its "cause of action" must be the split-recovery provision in effect on March 1, 2014, the date the jury returned its verdict in this case.

But the State's approach ignores a critical distinction between a recognized cause of action—such as breach of contract—and recovery of punitive damages.[18] Ordinarily, a party does not have a cause of action for punitive damages.[19] Instead, a party's right to seek punitive damages is inextricably linked to an underlying cause of action.[20] For this reason, other courts

---

[15] *Carlucci v. Utah State Indus. Comm'n*, 725 P.2d 1335, 1336 (Utah 1986); *State v. Clark*, 251 P.3d 829, 833-34 (Utah 2011).

[16] *State v. Clark*, 251 P.3d 829, 833-34 (Utah 2011).

[17] *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 843 (Utah 1996).

[18] *See Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447 (Utah 1993) (rejecting defendant's invitation to apply amendment to punitive damages statute, because the claims arose prior to the statutory enactment, which expressly provided that it applied only to claims arising after the effective date of the statute).

[19] *Norman v. Arnold*, 57 P.3d 997, 1001 n.2 (Utah 2002).

[20] *See Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 640 (Utah 1980) ("Because there is no claim for relief for punitive damages as such, a claim for punitive damages must be related to an underlying cause of action on which

have determined that the substantive law governing the scope of punitive damages recovery is governed by the law in effect at the time the underlying cause of action arose.[21]

The State's attempt to characterize the split-recovery provision as creating a separate and independent cause of action that accrues on the date of the verdict is also problematic because of the nature of the interest. Just as the plaintiff's interest is bound up in the underlying claim, the State's recovery is necessarily dependent on the plaintiff succeeding at trial. Unless the plaintiff prevails on the underlying cause of action, neither the plaintiff nor the State would be entitled to any recovery of punitive damages. In this respect, the State's recovery is necessarily bound up in and subordinate to the underlying cause of action. And the substantive law at the time of the underlying claim must have some effect on the scope of the recovery of punitive damages.

Stated differently, while the current version of the split-recovery provision may provide the State with a basis for intervening in a pending suit to assert a statutory interest in a jury award, the court remains unconvinced that this interest trumps the scope of a plaintiff's recovery as it existed at the time the underlying cause of action arose. For this reason, the court concludes that the accrual of the underlying cause of action, as opposed to the date of the verdict, is the temporal reference for determining the substantive law governing punitive damage recovery.

The court further notes that this approach is consistent with the Legislature's adoption of Utah Code Section 68-3-3. Under this statute, the Utah Legislature barred courts from applying any provision of the Utah Code retroactively, "unless the provision is expressly declared to be

---

the punitive damages may be based."); *cf. Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1183 (Utah 1983) (rejecting defendant's argument that a claim for punitive damages was a separate and new cause of action).

[21] *See Seltzer v. Morton*, 154 P.3d 561, 596 (Mont. 2007) (concluding subsequent amendment to punitive damages statute did not limit recovery for a claim that accrued prior to the amendment); *cf. Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S.1, at 5, 20 n.9 (1991).

retroactive."[22] But the State's theory appears to retroactively apply the split-recovery provision. Dr. Braun's recovery of punitive damages is inherently tied to a fraudulent inducement claim, which accrued four years before the Utah Legislature cured the constitutional defects of the split-recovery provision. By definition, the State's approach would require this court to retroactively apply substantive law to a claim that existed long before the legislative enactment.

The State's argument is in tension with Utah Code Section 68-3-3. In light of this statute, it seems likely that the Legislature would have expressly provided for the retroactive application of the split-recovery provision if it had intended for the enactment to divest parties of punitive damages awards on causes of action that arose prior to 2004. As a result, in the absence of any express statutory language or legislative history to the contrary, the court must conclude that the Legislature intended for the amended split-recovery provision to apply only to those claims that accrued after the adoption of the current version of the statute.

Accordingly, the court will apply the split-recovery provision in effect at the time of the underlying claim. In this case, the claim that forms the basis for punitive damages arose prior to April 1, 2000.[23] Because the Utah Supreme Court struck down the provision in effect in 2000,[24] the State is not entitled to any portion of the punitive damages awarded to Dr. Braun.

## II. ANALOGY TO PUNITIVE-CAP PROVISIONS

In their briefing, the parties invite the court to consider cases involving treatment of punitive-cap provisions, which some states have adopted to limit the total amount of punitive damages plaintiffs may recover for certain categories of claims. Dr. Braun argues that punitive-cap provisions and split-recovery provisions are analogous because both substantively diminish a

---

[22] Utah Code Ann. § 68-3-3.

[23] *See* Dkt. No. 607, at 2.

[24] *Smith v. Price Dev. Co.*, 127, P.3d 945, 950-53 (Utah 2005).

plaintiff's recovery.[25] In contrast, the State maintains that punitive-cap statutes are distinguishable because they do not create a new third-party interest in a jury's verdict.[26]

*Marshall v. TRW, Inc*. provides an interpretive framework.[27] In *Marshall*, a jury awarded a former employee compensatory and punitive damages for injuries arising out of a work-place accident.[28] The district court declined the defendant's invitation to apply a punitive-cap statute adopted before the jury verdict but after the employee's termination and the filing of his case.[29] On appeal, the defendant argued that the amended statute applied to the claim and limited the amount of punitive damages that the plaintiff was entitled to recover. The Tenth Circuit, however, disagreed. The Tenth Circuit recognized that the Oklahoma Supreme Court had previously held "statutory increases in wrongful death limitations were changes in substantive rights and would not be applied retroactively." Applying this general principle in the context of punitive-damage caps, the Tenth Circuit held that the district court did not err when it predicted that Oklahoma courts would decline the defendant's invitation to retroactively apply a punitive cap provision to a pre-existing claim.[30]

Similar considerations drive this court's treatment of Utah's split-recovery provision. Much like the punitive-cap provision at issue in *Marshall*, Utah's split-recovery provision alters a party's substantive recovery of punitive damages. And similar to Oklahoma, the Utah Legislature has instructed courts to refrain from applying substantive statutory provisions

---

[25] Dkt. No. 607, at 6-8.

[26] Dkt. No. 594, at 6.

[27] 900 F.2d 1517 (10th Cir. 1990).

[28] *Id.* at 1518-19.

[29] *Id.* at 1523.

[30] *Id.* at 1523-24; *see also Seltzer v. Morton*, 154 P.3d 561, 596 (Mont. 2007) (concluding subsequent amendment to punitive damages statute did not limit recovery for a claim that accrued prior to the amendment); *cf. Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S.1, at 5, 20 n.9 (1991).

8

retroactively in the absence of an express legislative directive do so.[31] Although the current split-recovery provision clearly envisions that the State will have a substantive interest in punitive damages claims award flowing from claims that accrue after the 2004 amendment, the State has not provided the court with a sufficient justification for disregarding the substantive scope of a private party's recovery under a prior version of the statute. Where the State fails to meaningfully distinguish between the practical effect of punitive-cap provisions and split-recovery provisions, the court concludes that cases discussing punitive-cap provisions are analogous to the issue presented in this case and weigh against apportionment.

### III.   DISTINGUISHING TAKINGS CASES

Finally, the court briefly addresses the State's argument that a plaintiff has no substantive right to punitive damages before a jury returns its verdict. For this novel proposition, the State relies primarily on takings cases from other jurisdictions.[32] After careful consideration, the court concludes that the State's theory is unpersuasive for two reasons.

First, the State has not shown that the takings cases cited are determinative of the legal issue before this court. In the takings decisions, the principal focus is generally when and whether a property interest attaches within the meaning of the due process clause.[33] This issue appears to be a great deal more specific and narrow than whether and when a party possesses a substantive right to seek and recover punitive damages under Utah law.[34] And the State does not

---

[31] Utah Code Ann. § 68-3-3.

[32] Dkt. No. 594, at 5.

[33] *See, e.g., DeMendoza v. Huffman*, 51 P.3d 1232, 1245-56 (Or. 2002); *Rhyne v. K-Mart Corp.*, 594 S.E.2d 1, 14 (N.C. 2004).

[34] *See Waddoups v. Noorda*, 321 P.3d 1108, 1112 (Utah 2013) ("Laws that 'enlarge, eliminate, or destroy vested or contractual rights' are substantive and are barred from retroactive application absent express legislative intent."). In *Waddoups*, for example, the Utah Supreme Court concluded that a statute that abrogated a cause of action could not be applied retroactively, because it affected a party's substantive right to seek recovery. *Id.*

9

supply the court with any decisions that equate a due process property interest with the Utah Supreme Court's approach to determining the applicable substantive law.

Second, while the State relies heavily on these cases for the proposition that a plaintiff's right does not accrue until the time of judgment, these cases are factually distinguishable from the question presented here. In the cases cited by the State, the courts assumed without much discussion that the split-recovery provision in effect at the time of the underlying claim applied to the constitutional challenge.[35] Here, the court is asked to determine the scope of a plaintiff's claim to punitive damages for a claim that arose four years prior to the legislative enactment.

In the absence of any legal authority that specifically supports the State's approach, the court must conclude that the general principles espoused in Utah Supreme Court precedent[36] and Utah Code Section 68-3-3 apply to this case. The court is mindful of a state's interest in recovering a portion of punitive damages, which exist in part to remedy the harms inflicted on similarly situated residents. However, where the current split-recovery provision, at least in part, limits a plaintiff's substantive recovery, the court cannot, as a matter of law, retroactively apply it to pre-existing claims in the absence of an express legislative enactment.

## CONCLUSION

For the reasons stated, the court concludes that the split-recovery provision in effect at the time of the underlying claim applies to Dr. Braun's punitive damages award. Because the prior

---

[35] *DeMendoza v. Huffman*, 51 P.3d 1232, 1245-46 (Or. 2002) ("Moreover, in this case, in which the tort that gave rise to plaintiffs' claim occurred after ORS 18.540 was enacted, plaintiffs cannot credibly argue that they had any expectation interest in the portion of the punitive damages award that the statute directs to the Criminal Injuries Compensation Account."); *Rhyne v. K-Mart Corp.*, 594 S.E.2d 1, 14 (N.C. 2004) ("Here, the incident for which plaintiffs sough punitive damages occurred in 1998, two years after the effective date of [the statute]. Therefore, the rights plaintiffs possessed regarding the jury's role in awarding punitive damages were properly limited[.]").

[36] *See supra* Part I.

statute is unconstitutional, the court directs the Clerk of Court to enter judgment in favor of Dr. Braun in the amount of $37,050,002.[37]

SO ORDERED this 3rd day of July, 2014.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[37] *See* Dkt. No. 588.