IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN T. BRAUN, MD, <br><br> Plaintiff, <br><br> v. <br><br> MEDTRONIC SOFAMOR DANEK, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:10-CV-001283 <br><br> Judge Robert J. Shelby |

A ten-day jury trial in this case resulted in a verdict in favor of Plaintiff John T. Braun, M.D., on his claims for breach of contract, breach of implied covenant of good faith and fair dealing, trade secret misappropriation, and fraudulent inducement. The jury also awarded Dr. Braun punitive damages after finding that Defendant Medtronic Sofamor Danek, Inc. acted willfully and maliciously, or with reckless indifference toward Dr. Braun's rights. Medtronic now moves for judgment on these claims as a matter of law under Federal Rule of Civil Procedure 50(b) (Dkt. 648), or alternatively for a new trial under Rule 59 (Dkt. 647). In turn, Dr. Braun moves to limit the scope of Medtronic's Rule 50(b) motion (Dkt. 657), and asks the court to sanction Medtronic for improperly withholding evidence in discovery. (Dkt. 678.)

Given the extensive briefing on these motions and the court's familiarity with the issues and evidence, oral argument is unnecessary. For the reasons stated below, Dr. Braun's motion to limit the scope of Medtronic's Rule 50(b) motion is granted. The three remaining motions are denied.

## BACKGROUND

Dr. Braun is an orthopedic spine surgeon.  He invented a device and method to treat pediatric scoliosis surgically, without requiring spinal fusion.  In general, the invention was a method of so-called "active correction" of spinal curvature using tethered bone-anchor screws that are surgically placed in the vertebrae.  Medtronic is a medical device company that does business in many areas, including the treatment of scoliosis.  In October 1999, Dr. Braun disclosed his invention to Medtronic, and the parties negotiated Medtronic's licensing of his invention.  In April 2000, the parties signed an agreement in which Medtronic contracted to pay Dr. Braun a lump sum of $200,000 and a five percent royalty on each sale of a licensed device.

Dr. Braun's business relationship with Medtronic later deteriorated, leading Dr. Braun to file this lawsuit in December 2010.  Extensive motion practice ensued.  Several pretrial motions are relevant to the issues now before the court.  First, Medtronic filed after the close of discovery a number of motions for summary judgment, including a motion seeking judgment on Dr. Braun's trade secret misappropriation claim.  Medtronic's motion was based, in part, on the fact that Dr. Braun styled his claim as one arising under common law.  Medtronic's moving papers correctly noted that Utah eliminated common law claims for trade secret theft when it adopted a preemptive statutory basis for recovery.  Dr. Braun responded to Medtronic's motion substantively, and also sought leave to make a technical correction to the heading of the claim in his operative complaint, clarifying that the claim arose under the Utah statute.  The court allowed the requested amendment, noting that the substance of the claim was unchanged and that Medtronic was not unfairly prejudiced by the purely technical amendment.

Following resolution of the motions for summary judgment, the case was set for trial on Dr. Braun's claims for breach of contract, breach of the implied covenant of good faith and fair

dealing, fraudulent inducement, trade secret misappropriation, and tortious interference with prospective economic relations.  The parties then filed numerous pretrial motions in limine.  Important to the issues addressed below, Medtronic filed a pretrial *Daubert* motion seeking to exclude at trial the testimony of Dr. Braun's damages expert, Michael Collins (the Collins *Daubert* Motion).  After receiving argument from the parties during a pretrial motion hearing, the court declined to exclude Mr. Collins' testimony.  However, the court stated it would "consider a timely objection at trial if there's – if it turns out there just is not a sufficient foundation provided for this testimony at trial."  (Dkt. 530, p.36.)

The case then proceeded to trial.  Mr. Collins testified at the trial without contemporaneous objection by Medtronic concerning the adequacy of the foundation for his opinions.  After the close of Dr. Braun's case in chief, Medtronic purported to renew the Collins *Daubert* Motion, and then made an oral motion under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law.  Medtronic timely renewed the Rule 50(a) motion at the close of all evidence.  (Dkt. 657, p. v.)  The court reserved the motion.

After deliberating for two days, the jury returned a verdict in favor of Dr. Braun on all of his claims, save for tortious interference with economic relations.  The jury awarded $16 million on the breach of contract claims, nominal damages of $2 on the trade secret misappropriation claim, and $25,050,000 on Dr. Braun's fraudulent inducement claim.  After finding by clear and convincing evidence that Medtronic's conduct was willful and malicious, or manifested a reckless indifference to Dr. Braun's rights, the jury awarded Dr. Braun $12 million in punitive damages.  To avoid overlapping damages on alternative claims, the court entered judgment in the amount of $37,050,002.  (Dkt. 588.)

Medtronic then moved for judgment as a matter of law or, in the alternative, for a new trial.  (Dkt. Nos. 647, 648.)  Dr. Braun opposed these motions, moved to limit the scope of Medtronic's motion for judgment as a matter of law (Dkt. 657), and moved for sanctions against Medtronic.  (Dkt. 678.)

The court reviews these motions in turn, beginning with Dr. Braun's motion to limit the scope of Medtronic's Rule 50(b) motion for judgment as a matter of law.  As explained below, the court finds the motion to be well taken.  In view of that decision, the court then addresses those portions of Medtronic's Rule 50(b) motion that were properly preserved at trial, before taking up Medtronic's Rule 59 motion for a new trial.  Finally, the court considers Dr. Braun's motion for sanctions.

**DISCUSSION**

**I.  Dr. Braun's Motion to Limit the Scope of Medtronic's Rule 50(b) Motion for Judgment as a Matter of Law**

**A.  Standard of Review**

Federal Rule of Civil Procedure 50(a) allows a party during trial to move for judgment as a matter of law before the case is submitted to the jury.  The motion must "specify the judgment sought and the law and facts that entitle the movant to the judgment."  Fed. R. Civ. P. 50(a)(2).  If that motion is not granted, the matter is deemed submitted to the jury.  After a jury returns its verdict, a party may "file a renewed motion for judgment as a matter of law."  Fed. R. Civ. P. 50(b).  In combination, Rule 50(a) and Rule 50(b) limit the scope of posttrial motions for judgment as a matter of law to those issues presented to the court before the jury deliberates.

The parties in the instant case disagree about the purposes of Rule 50 and its specificity, preservation, and renewal requirements.  Medtronic seeks to avoid a "technical, rigid"

application of Rule 50, arguing that the court may consider in its Rule 50(b) motion any arguments Dr. Braun had notice of during this litigation.  (Dkt. 662, pp. 1-3.)  Dr. Braun urges the court to take a narrow approach, carefully comparing the arguments made in Medtronic's oral Rule 50(a) motion with the arguments now raised in its posttrial Rule 50(b) motion.  (Dkt. 657, pp. 1-3.)

If, as Medtronic suggests, the only preservation requirement for a Rule 50(b) motion is some prior notice to the court and the opposing parties of an argument or position, then a Rule 50(b) motion could renew arguments made in any pretrial motion or any colloquy during trial. Under such an approach, a Rule 50(b) motion could hardly be said to be renewing a Rule 50(a) motion.  Rule 50(b) would instead be a catch-all, and a Rule 50(a) motion would have no practical relationship to the Rule 50(b) motion renewing it.  Whatever other limitations exist, Rule 50(b) cannot be read to render a Rule 50(a) motion superfluous.

The court will not adopt this approach.  While Rule 50(b) does not require the hypertechnical parsing of the content of a Rule 50(a) motion urged by Dr. Braun, the Rule 50(a) motion necessarily defines the subject matter boundaries of a subsequent Rule 50(b) motion. Medtronic may properly renew in its Rule 50(b) motion only those arguments included in some form in its Rule 50(a) motion made at trial.

**B.  Analysis**

In his motion to limit the scope of Medtronic's Rule 50(b) motion, Dr. Braun argues that several of Medtronic's arguments were not included in the Rule 50(a) motion and have not been

preserved.[1]  Before turning to the merits of Medtronic's 50(b) arguments, the court must first

address Dr. Braun's efforts to limit the scope of those arguments.

### 1. Breach of Contract

Dr. Braun first argues that none of Medtronic's Rule 50(b) breach of contract arguments

were made in its Rule 50(a) motion at trial and are therefore not preserved.[2]  In response,

Medtronic argues that it preserved the issues by renewing its Collins *Daubert* Motion close in

time to its Rule 50(a) motion after the close of Dr. Braun's case in chief.

The parties dispute whether the record supports the conclusion that Medtronic

successfully incorporated into its Rule 50(a) motion its pretrial arguments in the Collins *Daubert*

Motion.  But even assuming it did, Medtronic waived those arguments when it failed to timely

object during Mr. Collins' testimony at trial.  Because these *Daubert* arguments were waived

before Medtronic offered its Rule 50(a) motion, the motion could not preserve them.  They

cannot now be renewed in a Rule 50(b) motion.

Though an objection need not be "perfectly contemporaneous with the challenged

testimony," it should at the latest be "raised within a sufficient time after the proffer of testimony

so as to allow the district court an adequate opportunity to correct any error."  *Jones v. Lincoln*

*Elec. Co.*, 188 F.3d 709, 727 (7th Cir. 1999).  Here, Medtronic's attempted renewal of its pretrial

Collins *Daubert* Motion after Mr. Collins completed his testimony deprived Dr. Braun's counsel

of the opportunity to address any specific foundation objections by eliciting additional testimony

from the witness on the stand, and is therefore untimely.

---

[1] Dr. Braun stipulates that several arguments were properly preserved from Medtronic's 50(a) motion.
(Dkt. 657, pp. x-xiii.)  These arguments are resolved on the merits in Part II below.

[2] Dr. Braun stipulates that the issue of breach of implied covenant damages is preserved.

The Tenth Circuit applies a three-part test in determining whether a failure to make a timely objection at trial waives an earlier objection made in a motion in limine, looking to whether "(1) the matter was adequately presented to the district court; (2) the issue was of a type that can be finally decided prior to trial; and (3) the court's [pretrial] ruling was definitive." *Pandit v. Am. Honda Motor Co.*, 82 F.3d 376, 380 (10th Cir. 1996).  All three elements must be satisfied before a party is relieved of its obligation to renew an objection at trial.  The court's ruling on Medtronic's pretrial motion to exclude Mr. Collins' testimony was neither final nor definitive.  To the contrary, the court clearly informed Medtronic that it would revisit the issue at trial if a timely objection was presented during Mr. Collins' testimony.  Medtronic's failure to make a timely objection at trial therefore waived the issues presented in the Collins *Daubert* Motion.  Because these *Daubert* arguments were waived, they could not have been included within Medtronic's Rule 50(a) motion, and cannot now be renewed by Medtronic's Rule 50(b) motion.

**2. Fraudulent Inducement**

Dr. Braun next argues that Medtronic attempts to raise in its Rule 50(b) motion several arguments relating to fraudulent inducement that were not included in its Rule 50(a) motion at trial: (1) that there is no evidence Dr. Braun relied on any of Medtronic's alleged misrepresentations; (2) that Dr. Braun failed to present evidence in support of damages; (3) that Dr. Braun failed to present evidence that Medtronic's conduct caused him any damages; and (4) that lost profits testimony from Mr. Collins, submitted to the jury, was impermissibly speculative and unreliable and should have been excluded.

These arguments were not raised in Medtronic's Rule 50(a) motion at trial.  Medtronic attempts to overcome this deficiency in two ways.  First, Medtronic resurrects the same argument

it made regarding Mr. Collins' contract damages testimony—claiming its foundational objection extended to damages for fraudulent inducement, and was preserved through its pretrial Collins *Daubert* Motion. (Dkt. 662, pp. 16-18.) These arguments, like the *Daubert* arguments relating to breach of contract, were waived by Medtronic's failure to timely object during Mr. Collins' testimony at trial and cannot now provide a basis for a Rule 50(b) motion.

Second, Medtronic argues that despite a lack of "technical" recitation in its Rule 50(a) motion, Dr. Braun was "on notice" of Medtronic's objections relating to damages and reliance. Medtronic urges an impermissibly broad view of the scope of Rule 50(b) renewals, which, for the reasons given above, are necessarily constrained by the scope of the earlier Rule 50(a) motion at trial. In that motion, Medtronic argued in relation to fraudulent inducement only (1) that there was a failure of evidence that Medtronic lacked a present intention to perform the contract with Dr. Braun, and (2) that Dr. Braun needed to show a non-speculative option available to him in order to prove damages and that such evidence was lacking. (Dkt. 601-4, pp. 34-36.) These arguments are properly preserved for Rule 50(b). But they do not encompass the other fraudulent inducement damages arguments raised by Medtronic in its Rule 50(b) motion. And contrary to Medtronic's suggestion that it challenged the sufficiency of the fraudulent inducement claim as a whole (Dkt. 662, p. 19), the arguments in its Rule 50(a) motion were narrow and specific.

Medtronic has provided no basis for finding the challenged fraudulent inducement arguments preserved. They may not be considered in connection with its Rule 50(b) motion.

### 3. Trade Secret Misappropriation

Finally, Dr. Braun challenges Medtronic's purported renewal of three distinct arguments relating to trade secret misappropriation: (1) that Medtronic was severely prejudiced by the

inclusion of a new trade secret misappropriation claim on the eve of trial; (2) that nominal damages are not recoverable under the Utah Uniform Trade Secrets Act (UUTSA); and (3) that Dr. Braun failed to present evidence of damages for each of his alleged trade secrets.

In its Rule 50(a) motion, Medtronic raised a number of arguments directed to trade secret misappropriation.  (Dkt. 601-4, pp. 36-39.)  But the three arguments challenged by Dr. Braun were not among them.  In arguing that it preserved these issues, Medtronic again relies on both its claimed renewal of its pretrial Collins *Daubert* Motion on damages and on a concept of general "notice" as a catch-all replacement for articulation of the specific bases on which a Rule 50(a) motion is made.  (Dkt. 662, pp. 14-15.)  These arguments fail for the same reasons discussed above regarding the breach of contract and fraudulent inducement claims.  The Collins *Daubert* Motion cannot preserve the damages arguments now offered because they were waived at trial, and other matters raised pretrial or during trial outside the context of a Rule 50(a) motion cannot be "renewed" in a Rule 50(b) motion.

Medtronic raises a different argument for preservation on the issue of nominal damages. Medtronic claims that as a matter of law a jury cannot award nominal compensation or unjust enrichment damages on a UUTSA claim, and the fact that it did so means the damages evidence on this claim was legally insufficient.  (Dkt. 648, p. 50.)

There is no dispute that Medtronic did not raise the issue of the legal availability of nominal damages in its Rule 50(a) motion.  (Dkt. 662, p. 15.)  Medtronic argues, however, that it "had no way of knowing during trial that the jury would return a verdict providing nominal damages under the trade secret claim."  *Id.*  The instructions and verdict form submitted to the jury support Medtronic's position.  The jury instructions included no charge concerning nominal damages for trade secret misappropriation: Instruction #66 discussed only actual loss suffered by

9

Dr. Braun and unjust enrichment accruing to Medtronic.  (Dkt. 572, pp. 73-74.)  Similarly, the Verdict Form did not mention nominal damages for trade misappropriation.

But a Rule 50(b) motion can renew only those matters first raised under Rule 50(a) before the jury begins its deliberations.  Rule 50(b) cannot incorporate arguments that could not have been raised under Rule 50(a).  Medtronic's argument for an exception on the basis of impossibility ignores both the plain language of Rule 50 and the availability of Rule 59 to address the work of an allegedly wayward jury.

First, Rule 50(a) expressly provides that a motion for judgment as a matter of law may be made "at any time before the case is submitted to the jury."  On its face, the Rule is limited to addressing issues that arise before a verdict is returned.  And as previously stated, Rule 50(b) cannot properly be read to expand the scope of a motion for judgment as a matter of law beyond the bases included in a Rule 50(a) motion.  Beyond that, Rule 59 provides the correct vehicle for the issue Medtronic seeks to address.  A litigant need not anticipate before deliberation arguments that might arise as a result of a jury verdict.  But where the question is not whether the jury had a sufficient basis for awarding certain damages, but simply whether the jury could legally do so, a party should move for a new trial under Rule 59.  *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 2010 WL 4054115 *17 (D. N.M. Aug. 26, 2010) (noting that where arguments involve "issues of law and not of the sufficiency of the evidence," Rule 59 is implicated).  Here, where the basis of the argument is that the jury could not legally award nominal damages, Rule 50(a) and Rule 50(b) are not the appropriate procedural vehicles, and Medtronic's argument is outside the scope of renewal.[3]

---

[3] Medtronic opposes Dr. Braun's motion to limit scope for this claim based only on the impossibility of anticipating an award of nominal damages.  (Dkt. 662, pp. 15-16.)  Another potential basis to find the nominal damages argument preserved can be found in Medtronic's motion for judgment as a matter of law.  (Dkt. 648, pp.

**4. Conclusion**

Dr. Braun's motion to limit the scope of Medtronic's Rule 50(b) motion is granted.  (Dkt.

657.)  The court will limit its consideration of Medtronic's 50(b) motion to the arguments

included and properly preserved in its Rule 50(a) motion at trial.

**II. Medtronic's Motion for Judgment as a Matter of Law**

**A.  Standard of Review**

A district court will grant a motion for judgment as a matter of law "[i]f a party has been

fully heard on an issue during a jury trial and the court finds that a reasonable jury would not

have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P.

50(a)(1).  A motion renewed after the jury has returned its verdict is decided under the same

standard.  *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1287 (10th Cir. 2006).  To be legally

sufficient, the jury verdict must be "supported by substantial evidence when the record is viewed

most favorably to the prevailing party."  *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120,

1128 (10th Cir. 2002).  Sufficient evidence can mean "something less than the weight of the

evidence," and consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion, even if different conclusions also might be supported by the

evidence."  *Id.* (*quoting Beck v. N. Natural Gas Co.*, 170 F.3d 1018, 1022 (10th Cir.1999)).

Importantly, "the mere existence of contrary evidence does not itself undermine the jury's

findings as long as sufficient other evidence supports the findings."  *Webco*, 278 F.3d at 1128

---

49-51.)  There, Medtronic discusses a case where a district court found that an award of nominal damages can demonstrate the insufficiency of evidence for any damages.  *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1337 (S.D. Fla. 2006) *aff'd*, 294 F. App'x 501 (11th Cir. 2008).  If Medtronic's nominal damages argument is construed to address the sufficiency of evidence, then its Rule 50(b) argument is arguably preserved. (Dkt. 657, p. 11.)  The court does not address whether the *Alphamed* approach is appropriate in this Circuit, and is not convinced that this argument is preserved for purposes of Rule 50(b).  Nonetheless, the court finds there is sufficient evidence for trade secret misappropriation damages in the amount awarded.  *See infra* pp. 15-16.

(internal quotations omitted).  A Rule 50(b) motion should be granted only "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1112 (10th Cir. 2004) (internal quotations omitted).

### B.  Analysis

Medtronic seeks judgment as a matter of law on all the claims on which Dr. Braun prevailed at trial and on the jury's punitive damages award.  (Dkt. 648.)  Having granted Dr. Braun's motion to limit the scope of Medtronic's motion, the court will address only those arguments Medtronic properly preserved at trial.  (Dkt. 647, pp. v-vii.)  Because all of Medtronic's arguments for judgment as a matter of law on the breach of contract claim are excluded, the motion on that claim is denied.

### 1. Breach of Implied Covenant of Good Faith and Fair Dealing

Medtronic seeks judgment as a matter of law on Dr. Braun's claim for breach of the implied covenant of good faith and fair dealing, arguing there was a lack of sufficient evidence of damages.  (Dkt. 648, pp. 28-29.)

Both parties recognize that breach of contract and breach of the implied covenant have a close relationship.  Under Utah law, all contracts are subject to the implied covenant, and a breach of the implied covenant is a breach of the contract itself.  *Brown v. Weis*, 871 P.2d 552, 563 (Utah Ct. App. 1994).  Damages likewise may be similar or even identical.  Though the claims here were separately pled, the same evidence could provide a sufficient basis for damages on either or both of the breach claims.  Accordingly, the question of damages for both claims was presented to the jury under a single heading of the Verdict Form.  (Dkt. 573, pp. 2-3.)  The jury was first asked to determine whether the elements for each claim had been satisfied, and then

instructed to enter one award of damages if the jury found liability on either or both breach claims.  (Dkt. 573, p. 3.)

In light of the jury's verdict that Medtronic breached both the contract and the implied covenant, there is no basis for concluding that the jury awarded damages based on one claim but not the other.  And because there was sufficient evidence for a damages award based on the breach of contract claim, any failure in sufficiency of the evidence for damages on breach of the implied covenant claim would not disturb the award in any event.[4]

Moreover, even if the jury had awarded damages based solely on the implied covenant claim, Medtronic has not demonstrated that the jury lacked sufficient evidence for its verdict on the claim.  Without separately reciting here all the evidence the jury received and had available for consideration, and having contemporaneously heard the evidence and testimony as it was received at trial, the court finds that the evidence was sufficient to support the jury's verdict. Therefore, Medtronic's motion for judgment as a matter of law on the breach of implied covenant claim is denied.

### 2. Fraudulent Inducement

Medtronic also seeks judgment as a matter of law on Dr. Braun's claim for fraudulent inducement.  (Dkt. 648, pp. 30-46.)  Medtronic contends that Dr. Braun failed to present sufficient evidence that Medtronic did not intend to perform the License Agreement (Dkt. 648, pp. 32-39) and that Dr. Braun failed to present evidence that a third party would have licensed his invention.  (Dkt. 648, pp. 39-41.)

---

[4] Moreover, Medtronic did not object to the Verdict Form containing only one damages question on the two contract claims.

Medtronic first submits that Dr. Braun failed to provide sufficient evidence that Medtronic did not intend to perform the License Agreement, arguing (1) that Medtronic's undisputed partial performance of the License Agreement and its passion and excitement for the bone-anchor device to treat pediatric scoliosis negate any inference that it did not intend to perform its contractual obligations to Dr. Braun, and (2) that the evidence presented by Dr. Braun is insufficient because it relates only to Medtronic's post-execution conduct.

Both arguments focus on the sufficiency of the direct evidence at trial but fail to account for the reasonable and justifiable inferences the jury was permitted to draw from that evidence. Dr. Braun correctly notes that the jury was instructed that it could weigh both direct and circumstantial evidence in considering the sufficiency of the evidence to support the claim.  (Dkt. 675, p. 25.)

Medtronic separately argues that there is a lack of evidence that a third party would have licensed the bone-anchor device.  (Dkt. 648, pp. 39-41.)  To the extent this would even provide a basis for judgment as a matter of law, the court finds Dr. Braun's opposition memorandum on this point convincing.  (Dkt. 675, pp. 19-23.)  Medtronic arbitrarily and improperly attempts to limit a critical aspect of the jury's work—drawing those inferences that the jury concludes reasonably and justifiably follow from all the direct and circumstantial evidence.  The court declines Medtronic's invitation to apply an unduly technical and restrictive view of the evidence the jury could properly consider, and the inferences it could reasonably draw from that evidence.

As with the breach of contract claims, the court is satisfied that the evidence presented at trial adequately supports the jury's damages award for fraudulent inducement.

### 3. Trade Secret Misappropriation

Medtronic also seeks judgment as a matter of law on Dr. Braun's claim for trade secret misappropriation.  (Dkt. 648, pp. 46-56.)  Medtronic argues that Dr. Braun failed to present evidence of damages, that its purchase of Dr. Braun's invention precludes the misappropriation claim, and that there was insufficient evidence at trial to support a conclusion that "active correction" for the treatment of pediatric scoliosis was a trade secret.  These arguments fail.

Medtronic has not provided any basis for questioning the sufficiency of the evidence on which the jury relied.  Dr. Braun's expert, Mr. Collins, testified concerning his damages calculations based on valuation, a legally permissible basis for an award.  Given the nature of the Verdict Form, which did not separate out damages for individual trade secrets, "Medtronic simply cannot show that the jury awarded trade secret damages for a non-trade secret."  (Dkt. 675, p. 47.)  For the reasons Dr. Braun articulates in his opposition memorandum (Dkt. 675, p. 50), Medtronic's argument that its acquisition of the invention precludes a successful misappropriation claim is likewise unconvincing.

As it did at trial, Medtronic makes a strong argument in its papers that the concept of "active correction" was not a trade secret at the relevant time.  (Dkt. 648, pp. 54-56.)  Another jury might agree with Medtronic.  After considering the competing evidence provided at trial by both parties, this jury did not.  Medtronic has failed to show, as it must at this stage, that no reasonable jury could conclude that active correction was a trade secret.  Medtronic's briefing establishes only that this was a question on which reasonable minds could disagree—precisely the zone of discretion reserved to the jury.  The jury had a sufficient basis, weighing all the evidence, to support its conclusion.  Medtronic's motion for judgment as a matter of law on trade secret misappropriation is denied.

### 4. Punitive Damages

Finally, Medtronic moves for judgment as a matter of law on the jury's punitive damages award, arguing a lack of sufficient evidence.  (Dkt. 648, pp. 56-60.)[5]

The jury's award of punitive damages was based on the underlying claim of fraudulent inducement, on which Dr. Braun prevailed.[6]  The court's instructions charged the jury with determining whether the elements of fraudulent inducement were met.  (Dkt. 573, p. 5.)  The jury concluded Dr. Braun proved his claim and awarded compensatory damages.

Where compensatory damages are awarded, Utah, by statute, allows for punitive damages, but only where certain specific factual findings are first made.  Utah Code Ann. § 78B-8-201.  Because the jury found for Dr. Braun on his fraudulent inducement claim, the Verdict Form asked (in language taken directly from the relevant Utah statute) whether the jury found "by clear and convincing evidence, that Medtronic's conduct was the result of willful and malicious conduct, OR conduct that manifested a knowing and reckless indifference toward, and a disregard of, the rights of others."  (Dkt. 573, p. 7.)  The jury indicated that it made these findings.  In separate deliberations following receipt of additional argument by the parties, the jury later elected to award punitive damages.  *Id.*

Medtronic argues that the jury's findings relating to the willfulness, maliciousness, or recklessness of Medtronic's conduct were insufficient to support an award of punitive damages

---

[5] Medtronic also argues that the punitive damages award should be vacated on the ground that Medtronic is entitled to judgment as a matter of law on the underlying claim of fraudulent inducement.  (Dkt. 648, p. 57 n.59.)  For the reasons stated above, Medtronic is not entitled to judgment as a matter of law on that claim.

[6] Under Utah law, a claim for fraudulent inducement requires finding by clear and convincing evidence: "(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage."  *Daines v. Vincent*, 190 P.3d 1269, 1279 (Utah 2008) (internal quotations omitted).

because the jury already made a similar finding when it decided in Dr. Braun's favor on his fraudulent inducement claim. Specifically, Medtronic argues that where an underlying claim (such as fraudulent inducement in this case) "includes willful, malicious, or fraudulent intent as an element," this same element cannot also serve as the aggravating circumstances that permit the jury to award punitive damages. Instead, Medtronic argues, Utah law requires finding "clear and convincing evidence of *additional* aggravating circumstances in order to obtain punitive damages." (Dkt. 648, p. 58) (citing *ProMax Dev. Corp. v. Mattson*, 943 P.2d 247, 260 (Utah Ct. App. 1997)).

Medtronic is correct that prevailing on a predicate claim does not automatically give rise to an award of punitive damages. *See Nelson v. Jacobsen*, 669 P.2d 1207, 1219 (Utah 1983).[7] But Medtronic's argument that the jury was required to find "additional" aggravating circumstances beyond the statutory prerequisites is unconvincing. Medtronic cites to the Tenth Circuit's *Farm Bureau* decision, applying Utah law, and its instruction that there "must be some 'additional aggravating circumstances' that warrant the award of punitive, as opposed to merely compensatory, damages." *Farm Bureau Life Ins. Co. v. Am. Nat. Ins. Co.*, 2011 WL 223731 (10th Cir. Jan. 26, 2011). Yet it seems clear that the Utah statute identifies those "additional aggravating circumstances," and the court does not read *Farm Bureau* to suggest otherwise.

At best, Medtronic seems to suggest that in the specific case of fraud, the punitive damages statute itself provides an insufficient definition of "additional aggravating circumstances," because the statutory language might allow a jury to conclude that if the elements of fraud are met, then punitive damages are appropriate. But the jury's conclusion that

---

[7] Dr. Braun appears to concede that the jury might "not [be] automatically required to award punitive damages on claims that include a showing of willful and malicious conduct as an element." (Dkt. 675, p. 62.)

the elements of fraud were proven does not compel a finding that punitive damages were appropriate—indeed, the statute identifies only when punitive damages "may be awarded," not when they must be.  Utah Code Ann. § 78B-8-201.  The Verdict Form here separated the question of the legal requirements for awarding punitive damages from the question whether to award punitive damages.  (Dkt. 573, pp. 7-8.)  And both of these questions were separated from the question concerning liability on the underlying fraudulent inducement claim.  Having independently found the statutory elements present, it was in the jury's discretion to award punitive damages.

Finally, under Utah law courts interpreting state statutes must look first to their plain meaning.  *E.g.*, *Marion Energy, Inc. v. KFJ Ranch P'ship*, 267 P.3d 863, 866 (Utah 2011).  The statute provides what a jury must find to award punitive damages, and those findings were made.  Medtronic has not persuaded the court to look beyond the plain language of the statute and create an exception in the case of fraud.  For these reasons, Medtronic's motion for judgment as a matter of law on punitive damages is denied.

## III. Motion for New Trial

### A.  Medtronic's Request to Expand Its Motion for New Trial

In addition to seeking judgment as a matter of law, Medtronic simultaneously filed a Rule 59 motion for a new trial.  Preliminarily, the court must resolve a dispute between the parties about the proper scope of that motion.  As discussed above, Dr. Braun objected to Medtronic's Rule 50(b) motion, arguing that Medtronic had failed to preserve many of the arguments when it failed to include them in its Rule 50(a) motion at trial.  In its memorandum in opposition to Dr. Braun's motion to limit scope, Medtronic requested that "any argument the Court deems not to have been preserved under Rule 50 should be converted to grounds for a new trial pursuant to

Rule 59 and heard in that context."  (Dkt. 662, pp vi, 19-20.)  The court declines Medtronic's invitation to consider those excluded Rule 50(b) arguments under the Rule 59 standard.

First, Medtronic's Rule 50(b) motion nowhere asks for consideration in the alternative as a Rule 59 motion, and its Rule 59 motion does not incorporate by reference the arguments separately made in its Rule 50(b) motion.  Parties may evaluate the relevant burdens and standards of review and logically conclude that certain arguments are more appropriate under Rule 50 or under Rule 59.  All the posttrial arguments raised should not automatically be considered under both standards.

Medtronic's proposed authority for automatic conversion does not suggest otherwise.  In *M.D. Mark, Inc. v. Kerr–McGee Corp.*, the Tenth Circuit heard from an appellant who raised detailed arguments in its Rule 50(b) motion, but gave only cursory treatment to the same in its Rule 59 motion.  565 F.3d 753, 762 (10th Cir. 2009).  Finding the arguments were not preserved for purposes of Rule 50(b), the Tenth Circuit "out of an abundance of caution," treated the summary argument as incorporating, by reference, the more detailed argument contained in the Rule 50(b) portion of its motion.  *Id*.  But here there is no suggestion in Medtronic's Rule 59 motion that Medtronic sought to incorporate by reference its more detailed Rule 50(b) arguments.

Second, the requested conversion risks prejudicing Dr. Braun significantly.  Dr. Braun responded to each of Medtronic's motions as they were filed, addressing the arguments asserted in each under the governing standards.  Because Medtronic made its conversion request in opposition to Dr. Braun's motion to limit the scope of Medtronic's Rule 50(b) motion, Dr. Braun had no reasonable opportunity to separately brief under the different Rule 59 standard those

issues he correctly asked the court to exclude from consideration in Medtronic's Rule 50(b) motion.

Moreover, Medtronic's request is improper under the court's local rules, which require that affirmative relief requested by a party be sought in a separate motion detailing the specific relief sought and the basis for that relief. DUCivR 7-1(b)(1)(A). Among other things, the local rules promote the orderly presentation of issues and assist the court and parties by avoiding moving targets in the papers. Medtronic's failure to comply with the court's local rules implicates both of these concerns. Medtronic essentially invites the court to order a new trial on the basis of arguments raised only in its Rule 50(b) motion and not briefed by Dr. Braun under the applicable Rule 59 standards. The court declines to do so. Prevailing parties are entitled to fair notice of the issues they must confront posttrial and the standards that will govern the resolution of those issues.

For all these reasons, the court will not consider as part of Medtronic's Rule 59 motion the arguments it failed to preserve in its Rule 50(a) motion at trial, but nevertheless asserted in its Rule 50(b) motion. The court will limit its consideration of the Rule 59 motion to the grounds set forth in the motion itself. (Dkt. 647.)

**B. Standard of Review**

"The standard for granting a motion for a new trial is less stringent than the standard applied" to a Rule 50 motion for judgment as a matter of law. *Megadyne Med. Prods., Inc. v. Aspen Labs., Inc.*, 864 F. Supp. 1099, 1102 (D. Utah 1994) *aff'd*, 52 F.3d 344 (Fed. Cir. 1995); *see Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008). The decision to grant a Rule 59 motion embraces not just the sufficiency of the evidence, but "all the reasons which inhere in the integrity of the jury system itself." *Weese v. Schukman*, 98 F.3d 542, 549 (10th Cir.

1996) (internal quotations omitted).  "A new trial may be appropriate where the jury verdict is against the weight of the evidence, the damages are excessive, a party was prejudiced by erroneous evidentiary rulings, or the trial was not fair to the moving party."  *Megadyne*, 864 F. Supp. at 1102.

Though the grounds for granting a new trial are potentially broad, motions of this kind "are generally disfavored, and should only be granted with great caution."  *Klein-Becker USA, LLC v. Englert*, 2011 WL 4079225 (D. Utah Sept. 13, 2011) *aff'd*, 711 F.3d 1153 (10th Cir. 2013) (internal quotations omitted).  Federal Rule of Civil Procedure 61 counsels that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial . . . .  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  Fed. R. Civ. P. 61.  The work, effort, and expense involved in trial cut against liberally granting such motions.  To give rise to a new trial, claimed error must be clear, prejudicial to the moving party, and must affect substantive rights.  *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1256 (D.N.M. 2010).

### C.  Analysis

Medtronic moves for a new trial on both liability and damages, and in the alternative for remittitur of damages.  In support of its motion, Medtronic argues:

(1) liability was found against the clear weight of the evidence (Dkt. 647, pp. 2-9);

(2) its Collins *Daubert* Motion should have been granted (*id.* pp. 9-11);

(3) fraudulent inducement damages of $25 million were excessive (*id.* pp. 11-15);

(4) jury instructions failed to adequately identify the elements necessary to award punitive damages (*id.* pp. 15-18);

(5) allowing Dr. Braun to amend his trade secret misappropriation claim on the eve of

trial introduced prejudice (*id.* pp. 18-20); and

(6) Dr. Braun's self-recorded deposition videos prejudiced Medtronic before the jury (*id.*

pp. 20-23).

Medtronic's second argument relies on its Collins *Daubert* Motion, which was waived by

its failure to timely object at trial.  Medtronic's third argument, directed to the amount of

damages awarded by the jury, depends in all crucial respects on the same Collins Daubert

Motion that Medtronic failed to preserve at trial, rather than on the jury failing to make

reasonable findings based on that evidence.  This argument is waived, with the possible

exception of the jury's actual calculation of the award.  On this narrow point, given the lenient

standard for the jury's calculation of damages, there is no appropriate basis for either striking the

award or reducing it via remittitur.  *See Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738

F.2d 1509, 1526 (10th Cir. 1984) *aff'd*, 472 U.S. 585 (1985).  Medtronic's fourth argument, to

the extent it was adequately preserved by timely objection to the court's instructions, is denied

for the reasons provided by the court at the time the court considered and rejected Medtronic's

arguments when finalizing the instructions.  (Dkt. 603-2, p. 11.)

This leaves Medtronic's first, fifth, and sixth arguments.  On the jury's finding of liability,

Medtronic argues: (1) that the jury could not have awarded lost profits under either a contract or

fraud theory because there was no evidence the FDA would have approved Dr. Braun's device;

(2) that the clear weight of the evidence showed that Medtronic intended to perform at the time

of signing the License Agreement; and (3) that Dr. Braun produced no evidence that another

company would have licensed the bone anchor.

The court finds that Dr. Braun produced evidence sufficient for the jury to find liability, and that the jury's damages award is adequately supported by the evidence. The issues presented at trial were classic jury questions, with a sufficient basis for the jury to find either in favor of or against Dr. Braun. The Verdict Form delivered by the jury was coherent and internally consistent. (Dkt. 573.) A new trial is not necessary to correct its considered judgment.

Worthy of more discussion is Medtronic's fifth argument. Shortly before trial began, on January 31, 2014, the court granted Dr. Braun leave to amend his trade misappropriation claim. (Dkt. 522). Medtronic argues this late amendment was prejudicial and allowed for the introduction of evidence "that was irrelevant to the real issues in the case." (Dkt. 647, p. 19.) Medtronic seeks a new trial on only the contract and fraudulent inducement claims—the "real issues"—with the trade misappropriation claim, and its associated evidence, excluded. *Id.* p. 20.

The court has previously considered and rejected Medtronic's argument against allowing amendment of the trade misappropriation claim. The amendment was simply a technical correction. Medtronic correctly argued before trial that the UUTSA precludes common law recovery for trade secret misappropriation, and the court allowed Dr. Braun to amend his Complaint to clarify that he was bringing the claim under the statute. The clarification changed neither the nature nor the substance of the claim, and did not alter its essential elements. Accordingly, the amendment did not allow Dr. Braun to surprise Medtronic with a previously unknown claim for relief, which might have prejudiced Medtronic's ability to bring a defense. The claim itself was adequately pled, and Medtronic enjoyed adequate notice of the contours of that claim. The claim could therefore be brought to trial, even on a late technical amendment.

Absent finding the amendment prejudicial, which the court again declines to do, Medtronic's argument for a new trial is unconvincing.[8]  The evidence at issue was clearly relevant to the trade misappropriation claim, and the claim was a "real issue" at trial.  Medtronic simply speculates that the jury improperly considered this evidence in its findings on the contract and fraudulent inducement claims.  There is simply no evidence that the trial as a whole was "infected" or "contaminated" by the jury's consideration of the trade misappropriation claim.  A new trial is unnecessary on this theory.  (Dkt. 647, pp. 19-20.)

Medtronic's sixth and final argument involves Dr. Braun's use of self-recorded deposition videos.   Medtronic's objection to this evidence has been consistent: it raised concerns about these videos before they were recorded (Dkt. 226) and subsequently moved in limine to exclude them.  (Dkt. 393.)  The court allowed recording to proceed in discovery and denied a motion in limine to exclude them.  (Dkt. 647, p. 20.)[9]

Medtronic continues to insist that the videos were "unfavorable" and contributed to an adverse result.  But Medtronic has not convinced the court that it was necessary to exclude this evidence.  The video deposition testimony was clear, understandable, and appeared to accurately portray the testimony of the witnesses.  In resolving the motion in limine, the court could discern no prejudice to Medtronic by allowing Plaintiff to present this evidence—and no prejudice was apparent at trial.  The court's admission of this evidence does not justify a new trial.

Considering Medtronic's Rule 59 motion as a whole, the court is not left with a definite and firm conviction that a mistake has been committed by the jury or that a new trial would serve

---

[8] Medtronic's allegations concerning a claimed lack of specificity in describing the trade secrets at issue addresses the merits of the trade misappropriation claim, not its amendment.  (Dkt. 698, p. 70) (incorporated by reference, Dkt. 699, p. 19.)

[9] Medtronic did not offer any contemporaneous objection at trial to the admission of these videos.  (Dkt. 699, pp. 19-21) (not disputing Dr. Braun's assertion, Dkt. 676, p. 63, that no contemporaneous objection was made).

the interests of justice.  Motions for a new trial direct a court to look to considerations of fairness, accuracy, soundness, and the potential for any events at trial to have undermined confidence in the determination of the jury.  Here, the court finds no basis to conclude that any of these considerations are implicated.  Medtronic's Rule 59 motion is denied.

## IV. Motion for Sanctions

Finally, the court turns to Dr. Braun's motion for sanctions.  (Dkt. 678.)  The relief sought by Dr. Braun is either moot or beyond the power of this court to grant.

Dr. Braun seeks in his motion equitable relief, rather than the imposition of monetary sanctions.  Specifically, he seeks a "terminating sanction denying Medtronic's posttrial motions and its appeal rights related to trial."  (Dkt. 678, p. 2.)  It would be an extraordinary step to preclude Medtronic's rights to appellate review of this court's rulings and one which the court likely lacks authority to take.  In all other relevant respects, Dr. Braun's requested relief has already been granted on the merits: the court has denied both of Medtronic's posttrial motions in their entirety.  Dr. Braun seeks a sanction "in the alternative"—estopping Medtronic from certain arguments either to this court or on appeal—but this alternative request is likewise either improper or unnecessary in light of the court's rulings on Medtronic's posttrial motions.

Having denied Medtronic's motions for a new trial and for judgment as a matter of law, Dr. Braun's relief has already been afforded, to the extent the court can provide it.  His motion for sanctions is denied as moot.

## CONCLUSION

Dr. Braun's Motion to Limit Scope is **GRANTED**.  (Dkt. 657.)  Dr. Braun's Motion for Sanctions is **DENIED**.  (Dkt. 678.)  Medtronic's Motions for a New Trial and for Judgment as a Matter of Law are hereby **DENIED**.  (Dkt. Nos. 647, 648.)

SO ORDERED this 21st day of October, 2015.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

26